Luis Castro Feliú, demandante y apelado, *v.* Rexach Racing & Sporting Corporation, demandada y apelante.

Núm. 8485.—*Sometido:* Abril 7, 1942. *Resuelto:* Abril 23, 1942.

*Luis Sánchez Vahamonde* y *H. Torres Solá,* abogados de la apelante; *Leopoldo Feliú,* abogado del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

En octubre 18 de 1937, la corporación demandada nombró al demandante Luis Castro Feliú para el cargo de Administrador del hipódromo "Las Casas", por un término de cinco años, comprometiéndose a pagarle por sus gestiones "treinta por ciento de los beneficios netos que se obtengan por la corporación en los días de carreras de caballos que se celebren en el hipódromo 'Las Casas'." De acuerdo con los términos del contrato que por escrito celebraron dichas partes, la remuneración del administrador debería computarse de acuerdo con la siguiente tabla:

Hasta $12,000 de ganancias netas_____ 30 por ciento
Entre $12,000 y $20,000 o sea sobre $8,000_____ 25 por ciento
En toda ganancia en exceso de $20,000_____ 10 por ciento

En el párrafo 4 del contrato se estipuló que "Se entenderán por ganancias netas de la corporación los beneficios que se obtengan como resultado de las carreras de caballos que se celebren en el hipódromo 'Las Casas' ", después de descontar el importe de premios a dueños de caballos, contribuciones, premios de seguros, gastos de conservación de las propiedades, impresos y anuncios relacionados con las carreras y, especialmente:

"(*e*) Todos los gastos conocidos en los hipódromos como 'DE CARRERAS', tales como pago del personal del *pool, Subscription Fund,* taquillas, maceros, . . . ".

El párrafo 8 del contrato, lee como sigue:

"8. El producto de la venta de cuadros para jugar al Pool no se considerará como ingreso de la corporación pues todo lo relacio-

nado con dichos cuadros será resuelto en el futuro por la corporación''.

En abril 18, 1940, Castro radicó una demanda en la que, después de exponer los términos y condiciones de su contrato con la demandada, alega que él actuó como administrador del hipódromo ''Las Casas'' y cumplió con todas las obligaciones de su cargo, hasta junio 30, 1938 en que ambas partes dieron por terminado el contrato, sin perjuicio de que se practicara una liquidación de los beneficios líquidos obtenidos y se pagara al demandante la suma que pudiera corresponderle de acuerdo con el contrato; que según su información y creencia los beneficios netos obtenidos por la demandada ascienden a $25,341.31, de la que le corresponde a él, de acuerdo con el contrato, la suma de $3,984.13; y que la demandada se ha negado a practicar la liquidación de beneficios y a pagar al demandante la suma que a éste corresponde. Pide el demandante que se ordene que por la demandada se practique inmediatamente, con la intervención de la corte y del demandante ''una liquidación completa, fiel y correcta de los beneficios netos por ella obtenidos de la celebración de carreras de caballos y juegos de pool, bancas y subscription funds celebrados en su hipódromo 'Las Casas', desde octubre 18, 1937 hasta junio 30, 1938''; y que determinada así dicha suma, se condene a la demandada a pagar al demandante la suma que de dichos beneficios le corresponda, con intereses, costas y honorarios.

Contestó la demandada negando específicamente todos y cada uno de los hechos esenciales de la demanda.

En 30 de diciembre de 1940, la Corte de Distrito de San Juan dictó sentencia declarando con lugar la demanda y ordenando:

'' . . . que por la demandada Rexach Racing & Sporting Corporation se practique inmediatamente, a su costa, con la intervención de esta corte y del demandante, una liquidación de los beneficios netos por ella obtenidos de la celebración de carreras de caballos en el hipódromo 'Las Casas' desde octubre 18 de 1937 hasta junio 30

de 1938, a los fines de fijar la suma que de dichos beneficios y de acuerdo con las estipulaciones del contrato celebrado con el demandante le corresponde al mismo; y una vez fijados y determinados dichos beneficios se pague al demandante Luis Castro Feliú la suma que de dichos beneficios netos le corresponda, con sus intereses al 6 por ciento anual desde abril 18 de 1940. Se condena a la demandada al pago de las costas."

En enero 3, 1941 el demandante solicitó la reconsideración y enmienda de la sentencia, en el sentido de disponer (a) que la liquidación ordenada deberá comprender todos los beneficios obtenidos por la demandada de las carreras de caballos y juegos de pool, bancas y "subscription funds", celebrados en el hipódromo "Las Casas"; (b) que la demandada deberá pagar intereses sobre la suma correspondiente al demandante, desde la fecha de terminación del contrato o sea desde junio 30, 1938; y (c) que la demandada deberá pagar al demandante los honorarios de su abogado. La moción de reconsideración fué declarada sin lugar, de plano. La corte hizo constar en su resolución que no procedía la imposición de honorarios por no haber temeridad de parte de la demandada, y que tampoco procedía la concesión de intereses por tratarse de una suma que aun no ha sido liquidada. La corte no expuso razón alguna para denegar la moción en cuanto a la petición para que se hiciera más específica la sentencia en cuanto a las partidas que debían incluirse en la liquidación.

En enero 30, 1941 la demandada radicó una moción allanándose a la sentencia de diciembre 30, 1940 y sometió con ella "una liquidación de todos los ingresos y egresos por concepto de carreras de caballos, y derivados de las partidas 'taquilla, pool y banca'." De acuerdo con dicha liquidación, la demandada tuvo desde octubre 16, 1937 a junio 30, 1938 un ingreso bruto de $107,229.99 y egresos por valor de $102,067.22, quedando un beneficio líquido de $5,162.77.

Se opuso el demandante a la aprobación del proyecto de liquidación sometido por la demandada, por el fundamento de que en el mismo no se incluían los ingresos habidos por

la demandada por concepto de subscription funds, servicio de cuadros, arrendamiento de cantinas, venta de programas y trasmisión de las carreras y juegos por radio; y alegó que el total de los ingresos realmente recibidos por la demandada excede de $126,000.

En contestación a la oposición del demandante, alegó la demandada que la inclusión de los beneficios obtenidos del subscription fund era cuestión que ya había sido resuelta por la corte inferior al denegar la reconsideración de su sentencia y que era por tanto aplicable la regla de *res judicata*.

En mayo 27, 1941 la corte inferior dictó una resolución que lee así:

"La sentencia de esta corte que declaró con lugar la demanda ordena que por la demandada se practique una liquidación de los beneficios netos obtenidos por ella en la celebración de carreras de caballos en el hipódromo 'Las Casas' desde octubre 18 de 1937 hasta junio 30 de 1938, a los fines de fijar la suma que de dichos beneficios y de acuerdo con las estipulaciones del contrato celebrado con el demandante le corresponde al mismo.

"Firme dicha sentencia, la demandada se limitó a radicar una relación de ingresos y egresos incompleta, pues en la misma existen solamente los ingresos procedentes de Pool, Bancas, y Taquillas durante el período a que se refiere la sentencia, faltando los ingresos que por otros conceptos, tales como 'Subscription Fund', arrendamiento de las cantinas, y servicio de radio, obtuvo la misma durante dicho período.

"*Dispone el contrato* que la demandada pagará al demandante un tanto por ciento de los beneficios netos que se obtengan por la corporación *en los días de carreras de caballos que se celebren en el hipódromo de la demandada,* y que se entenderá por ganancias netas de la corporación los beneficios que se obtengan como resultado de las carreras de caballos que se celebren, después de descontar, entre otros gastos, todos los gastos conocidos en los hipódromos como 'de carreras', tales como pago del personal del Pool, Subscription Fund, etc., lo que demuestra que durante los días de carreras es que se juega el Subscription Fund y que el demandante tiene derecho a participar de los beneficios que la corporación pueda obtener por tal concepto, pues no puede jugarse el Subscription Fund sin la celebración de carreras.

"Se ordena a la demandada que dentro de diez días radique una relación, y sirva copia de la misma al demandante, de todos los ingresos y egresos de la misma en los días en que se celebraron carreras de caballos en el hipódromo 'Las Casas' durante el período comprendido entre octubre 18 de 1937 a junio 30 de 1938, todo ello en cumplimiento de la sentencia dictada en este caso."

Es contra esa resolución que la demandada Rexach Racing & Sporting Corporation interpuso el presente recurso, alegando que la misma es contraria a derecho y viola el *status* de hecho y de derecho establecido por la sentencia dictada por el mismo tribunal en diciembre 30 de 1940, la cual es firme por no haber sido apelada por ninguna de las partes.

La cuestión a resolver es si la denegación por la corte inferior de la reconsideración de la sentencia impedía al demandante oponerse a la aprobación del proyecto de liquidación por el fundamento de no haberse incluído en el mismo los beneficios del Subscription Fund. Dicha cuestión debe a nuestro juicio contestarse en la negativa.

■■ La sentencia dictada en diciembre 30, 1940 era enteramente favorable al demandante y, como ya hemos visto, ordenaba a la demandada que practicase una liquidación "de los beneficios netos por ella obtenidos de la celebración de carreras de caballos". Es, pues, natural que el demandante no apelase de una sentencia dictada a su favor y de acuerdo con la súplica de su demanda. Tampoco podía apelar el demandante de la resolución denegando la reconsideración, por no ser ésta apelable.

■■ No podemos aceptar como indiscutible la argumentación de la apelante al efecto de que la negativa de la corte sentenciadora a hacer más específica la sentencia, enumerando las partidas que debían figurar en la liquidación, equivale a una adjudicación adversa al demandante en cuanto a su alegado derecho a participar de los beneficios procedentes del Subscription Fund. Nos inclinamos más bien a creer con el demandante—en ausencia de una manifestación expresa de la corte sentenciadora—que si la corte inferior declaró sin

lugar la reconsideración fué porque estimó que su sentencia era suficientemente clara y específica para que las partes interesadas pudiesen comprender su alcance. Cuando surgió la controversia entre las partes en cuanto a si la liquidación debía o no incluir los beneficios derivados del Subscription Fund, la corte sentenciadora, interpretando el alcance y significado de su propia sentencia, la dirimió resolviendo que sí debían incluirse.

Opinamos que la corte sentenciadora interpretó correctamente el contrato entre las partes. De acuerdo con sus términos, el demandante tiene derecho a participar en las ganancias netas obtenidas por la demandada ''en los días de carreras de caballo que se celebren en el hipódromo 'Las Casas' '', entendiéndose como ganancias netas ''los beneficios que se obtengan como resultado de las carreras de caballos''.

Si tuviésemos alguna duda en cuanto a si los beneficios procedentes del Subscription Fund son beneficios obtenidos ''como resultado de las carreras de caballos'', esa duda quedaría resuelta en el sentido de que lo son al considerar que en el contrato se estipula expresamente que para llegar a la determinación de las ganancias netas se descontarán de los ingresos brutos, entre otras cosas, ''todos los gastos conocidos en los hipódromos como DE CARRERAS, tales como pago del personal del pool, Subscription Fund, taquillas, maceros, etc.''. Parece justo y lógico sostener que si los gastos del Subscription Fund son gastos de las carreras y como tales deducibles del ingreso bruto, el beneficio neto de ese mismo Subscription Fund debe ser considerado como parte integrante del beneficio neto obtenido por la corporación como resultado de las carreras de caballos, en cuyo beneficio tiene participación el demandante. Además, sería muy difícil aceptar que el demandante se comprometiera a administrar el Subscription Fund de la demandada y a contribuir a los gastos del mismo, renunciando a toda participación en los beneficios netos derivados de dicho juego. Si las partes contratantes hubiesen tenido la intención de excluir los beneficios

del Subscription Fund, fácilmente pudieron haberlos excluído, como lo hicieron con respecto al producto de la venta de cuadros para jugar al pool, que siendo un ingreso obtenido de las carreras de caballos fué expresamente excluído de los ingresos a liquidar, por la cláusula 8 del contrato, supra.

Opinamos que la regla de *res judicata* invocada por la parte apelante no es de aplicación a los hechos y circunstancias del presente caso. La sentencia de diciembre 30 de 1940, aun cuando puso fin a la controversia al resolver que el demandante tenía derecho a recobrar las cantidades que pudieran corresponderle de acuerdo con los términos del contrato y quedó firme al no ser apelada por ninguna de las partes, no podía ser ejecutada sin que antes se practicara la liquidación necesaria para fijar el montante de la participación que en los beneficios correspondía al demandante. La corte sentenciadora retuvo plena jurisdicción sobre las partes y sobre la causa de acción y estaba facultada para dictar cualquier orden tendiente a interpretar los términos y el alcance de su propia sentencia.

*La resolución recurrida debe ser confirmada y el caso devuelto al tribunal inferior para ulteriores procedimientos no inconsistentes con esta opinión.*