DELBERT D. DUMONT, demandante y recurrido, *v.* INMOBILIARIA ESTADO, INC., demandada y recurrente; CARIBBEAN PROPERTIES LTD., INC., tercera-demandada-recurrida.

*Número:* O-82-439        *Resuelto:* 22 de octubre de 1982

*Héctor Saldaña Egozcue,* abogado de la demandada-recurrente; *Igor Domínguez,* abogado del demandante-recurrido; *Carlos V. J. Dávila,* abogado de la tercera-demandada-recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

Los hechos en el presente caso no están en controversia: La corporación Inmobiliaria Estado, Inc. —aquí demandada-recurrente— es la dueña de un edificio de apartamentos para alquiler ubicado en la Calle Estado, Miramar, Santurce, Puerto Rico, el cual consta de nueve (9) pisos; en los primeros ocho hay dos apartamentos por piso y en el piso nueve hay un solo apartamento donde ha residido por varios años el demandante-recurrido Delbert D. Dumont. La referida Corporación resolvió someter dicho edificio al régimen de propiedad horizontal; ordenó una tasación a una compañía que se dedica a esos menesteres, la cual tasó cada uno de los apartamentos localizados en los primeros ocho pisos en la suma de $66,000 y el único apartamento del noveno piso en la suma de $160,000. Inmobiliaria contrató a la firma de corredores de bienes raíces, la tercera demandada-recurrida Caribbean Properties Ltd., para que vendiera los apartamentos por el precio de tasación con instrucciones de que ofreciera los mismos, en primer término, a los inquilinos actuales de los apartamentos.

Con fecha 18 de agosto de 1981 la Sra. Carmen Drouyn, vice-presidente de Caribbean, le envía la siguiente carta al Sr. Delbert D. Dumont:

martes 18 de agosto de 1981

Sr. Delbert Dumont
Edificio Estado #656, Apt. PH
Calle Estado
Miramar, P. R. 00907

Re: Venta apartamentos Edificio
Estado #656, Miramar, P.R.

Estimado Sr. Dumont:

Según autorización del dueño de edificio arriba mencionado se nos ha encomendado la venta de los apartamentos.

*El motivo de esta carta es notificarle a cada uno de los inquilinos que estuvieran interesados en comprar* el apartamento que alquilan actualmente, *se comuniquen con nosotros para informarle los detalles de la venta.*

*El precio de venta es $66,000.00*, según reciente tasación por Carlos Gaztambide y Asociados.

*Para más detalles* llame a nuestro teléfono 725-7365 *y gustosamente le informaré cualquier pregunta sobre la venta de estos apartamentos.* (Énfasis suplido.)

Atentamente,

CARIBBEAN PROPERTIES LIMITED

(firmado)
Carmen Drouyn
Vice Presidente

Mediante carta dirigida a la señora Drouyn de fecha 27 de agosto de 1981, el señor Dumont acusa recibo de la carta de fecha 18 de agosto de 1981 y acepta "la oferta de venta" que le hiciera ésta por la suma de $66,000 en relación con el apartamento que él ocupa en el referido edificio y le informa que está procediendo a levantar "los fondos correspondientes" en espera de que se le indique el día y lugar en que se otorgarán los documentos pertinentes.

Mediante carta de fecha 31 de agosto de 1981, recibida por el señor Dumont en los primeros días del mes de septiembre de 1981, la señora Drouyn le expresa a éste que por un "error involuntario de parte nuestra se le envió equivocadamente la carta correspondiente a los apartamentos y no al Penthouse" y le informa que el precio de venta del apartamento que el señor Dumont ocupa es de $160,000.

Así las cosas y no pudiendo llegar las partes mencionadas a un acuerdo,(1) el Sr. Delbert D. Dumont radica una

---

(1)Inmobiliaria Estado, Inc., mediante carta de fecha 22 de septiembre de 1981 dio por terminado el contrato de arrendamiento del apartamento; la representación legal del señor Dumont, mediante carta de fecha 14 de octubre de 1981 dirigida a la señora Drouyn, exigió el otorgamiento de las correspondientes escrituras de compraventa; y la corporación Inmobiliaria Estado, Inc., radicó demanda de desahucio contra el señor Dumont.

demanda sobre Sentencia Declaratoria ante el Tribunal Superior de Puerto Rico, Sala de San Juan, contra Inmobiliaria Estado, Inc., en la cual después de hacer una sucinta relación de los hechos antes relatados, solicita, en lo pertinente, del tribunal el que declare la existencia de un contrato entre "las partes" y le ordene a Inmobiliaria Estado, Inc., a otorgar las correspondientes escrituras de compraventa con la parte demandante por la suma de $66,000. (²) Inmobiliaria Estado, Inc., en su contestación a la demanda niega el tener responsabilidad u obligación alguna hacia el demandante y trae al pleito, mediante la radicación de una demanda contra tercero, a Caribbean Properties Ltd., alegando que en la alternativa de que el tribunal entienda que la demanda radicada es procedente en derecho la responsabilidad debe recaer sobre la citada tercera-demandada.

La tercera-demandada Caribbean Properties Ltd. radica, con fecha de 28 de enero de 1982, una bien fundamentada Moción de Desestimación y/o de Sentencia Sumaria. En la Súplica de la misma solicita del tribunal de instancia que "... por los fundamentos aquí expuestos, y aquellos que estime de rigor, *desestime la acción instada por la parte demandante Delbert D. Dumont,* imponiéndole a éste el pago de las costas, gastos y honorarios de abogados que envuelva este litigio para las otras partes; *y en su consecuencia desestime la demanda contra tercero* instada por la parte demandada contra la aquí compareciente, Caribbean Properties Ltd.". (Énfasis suplido.)

El tribunal de instancia (Wilfrido Roberts, J.) con fecha de 19 de febrero de 1982 emitió una orden que en lo pertinente expresa:

De no formularse oposición a la solicitud del tercero demandado, dentro del término de cinco días, *se accederá a lo solicitado.* (Énfasis suplido.)

---

(²) El señor Dumont consignó en el tribunal un certificado de ahorro del Banco Central y Economías por la suma de $68,651.75.

Con fecha de 1ro de marzo de 1982 la parte demandante Delbert D. Dumont solicita del tribunal de instancia el que le conceda hasta el 15 de marzo de 1982 para radicar su oposición a la citada Moción de Desestimación y/o de Sentencia Sumaria. La prórroga le fue concedida. Expirado dicho término sin que el demandante hubiera radicado su oposición, la tercera-demandada solicitó del tribunal de instancia que desestimara la demanda radicada por la parte demandante y en su consecuencia la demanda contra tercero.

El día 12 de abril de 1982 el tribunal de instancia dicta una sentencia parcial —notificada la misma con fecha de 14 de abril de 1982— la cual, en lo pertinente, lee como sigue:

### SENTENCIA PARCIAL

No habiéndose formulado oposición alguna a la moción de desestimación del tercero demandado, *se declara con lugar la citada moción* y de conformidad, se dicta sentencia *desestimando la demanda* y decretando *el archivo de este caso.* (Énfasis suplido.)

Ese mismo día 12 de abril de 1982 la parte demandante radica, tardíamente, su oposición a la referida Moción de Desestimación. El tribunal de instancia, con fecha de 20 de abril de 1982, dicta la siguiente Orden:

*Sin lugar*, véase nuestra sentencia de 12 de abril de 1982, declarando sin lugar *la demanda contra tercero.* (Énfasis suplido.)

En palabras de la propia parte demandante, "[e]n vista de que la Sentencia dictada el 12 de abril de 1982 . . . no estaba clara", esta parte radica una Moción de Reconsideración. El tribunal de instancia, con fecha de 27 de abril de 1982 —notificada a las partes el 29 de ese mes y año— y en relación con dicha Moción de Reconsideración, dicta la siguiente orden:

Sin lugar. *El demandante* pudo haber incluido como demandados en su demanda original al tercero demandado y

no lo hizo; pudo haberse opuesto a la moción de desestimación del tercero demandado dentro del término reglamentario o de la prórroga que concedimos pero esperó hasta después de ser notificado de nuestra sentencia *para radicar su escrito de oposición, sin méritos.* Nuestra sentencia de 12 de abril de 1982 *sólo tuvo la intención de desestimar la demanda contra tercero, no la demanda original.* Así debe entenderse enmendada y corregida, *nunc pro tunc.* (Énfasis suplido.)

Inmobiliaria Estado, Inc., con fecha de 11 de mayo de 1982, radica una Moción de Reconsideración en la cual solicita del tribunal de instancia que reconsidere su orden de fecha 27 de abril de 1982 mediante la cual enmendó *nunc pro tunc* la sentencia del 12 de abril de 1982; el tribunal de instancia declara sin lugar la referida moción el día 4 de junio de 1982.

Con el propósito de que este Tribunal revise la Resolución emitida el 27 de abril de 1982 por el tribunal de instancia, Inmobiliaria Estado, Inc. radica, el 8 de julio de 1982, el presente recurso de *certiorari.*

Este Tribunal, mediante resolución de fecha 29 de julio de 1982, le concedió a la parte demandante Delbert D. Dumont y a la tercera-demandada Caribbean Properties Ltd., el término de veinte días para que mostraran causa por la cual no debía revocarse la orden emitida el 27 de abril de 1982 por el tribunal de instancia y no se debía dictar sentencia en que se desestimara la demanda original radicada por Delbert D. Dumont.

Ambas partes han comparecido. Caribbean Properties Ltd. alega que este Tribunal no tiene jurisdicción por cuanto la demandada-recurrente Inmobiliaria Estado, Inc., dejó pasar el término jurisdiccional para revisar la sentencia dictada por el tribunal de instancia y pretende hacerla revisar ahora mediante la radicación de un recurso de *certiorari.* La parte demandante Delbert D. Dumont igualmente levanta el punto de falta de jurisdicción; en adición, argumenta el caso en los méritos.

Antes de entrar propiamente en la discusión sobre si tenemos o no jurisdicción para entender en el presente caso, consideramos procedente el hacer los siguientes señalamientos: No hay la menor duda de que la Moción de Desestimación y/o Sentencia Sumaria que radicó la tercera-demandada iba dirigida, principalmente, a la demanda original que radicó el demandante Dumont y, en segundo término, a la demanda contra tercero; ello surge claramente de una lectura de la argumentación contenida en la referida Moción y de la Súplica de la misma, la cual copiamos anteriormente. La demandada Inmobiliaria Estado, Inc. no tenía por qué oponerse a la citada Moción por cuanto la misma era en beneficio de ella. La parte contra quien se dirigía la misma, el demandante Dumont, se dio por aludida al solicitar prórroga para oponerse a la misma y, de hecho, radicó una Oposición.

Tampoco hay duda en que el tribunal de instancia en la orden que emitió con fecha de 19 de febrero de 1982 y en la sentencia parcial que dictó se refería a la demanda que radicó la parte demandante y no a la demanda contra tercero radicada por Inmobiliaria Estado, Inc.; y es que tenía que ser así, ya que en adición a que la moción de desestimación radicada, repetimos, iba principalmente dirigida a lograr la desestimación de la demanda original, si alguna parte le es responsable al demandante lo sería, si alguna, la tercera demandada Caribbean Properties Ltd. y no la demandada Inmobiliaria Estado, Inc.

Por lo tanto, entendemos que no es correcto el argumento de la parte demandante a los efectos de que Inmobiliaria Estado, Inc. se cruzó de brazos ante la primera orden y la sentencia parcial, emitidas por el tribunal de instancia.

Sí tiene razón en parte el demandante al argumentar que Inmobiliaria Estado, Inc. fue un tanto indolente al no acudir ante este Tribunal cuando el tribunal de instancia enmendó su sentencia mediante la orden de fecha 27 de

abril de 1982. Al así no hacerlo, se corrió un riesgo que pudo haberle resultado fatal.

¿Tienen razón, entonces, los recurridos al alegar que no tenemos jurisdicción en el presente caso? Resolvemos que no; veamos por qué.

■ Es claro que la enmienda efectuada por el tribunal de instancia fue de carácter sustancial; tan sustancial es, que mediante ella reinstala una causa de acción que había desestimado y desestima una que aparentemente había dejado en vigor.(3) No empece ello, no hay duda de que el tribunal de instancia tenía facultad para así hacerlo por cuanto la sentencia que enmendó no era final y firme en esos momentos y actuó con motivo de una moción de reconsideración radicada en tiempo por la parte demandante.(4) Véase, además, *Castro* v. *Rexach Racing & Sporting Corp.*, 60 D.P.R. 301 (1942).

Alega la parte demandante-recurrida que, realizada la enmienda por el tribunal de instancia, la parte demandada venía en la obligación, de no estar de acuerdo con ella, de revisar dicha sentencia enmendada mediante la radicación de un recurso de revisión dentro del término para ello provisto en las Reglas de Procedimiento Civil vigentes; ello no es correcto.

■ Este Tribunal tiene jurisdicción para entender en el presente recurso de *certiorari* por cuanto la sentencia que emitió el tribunal de instancia —tanto la original como la enmendada— fue "parcial", y debido a que al emitir la misma el tribunal de instancia no cumplió con los requisitos

---

(3) Decimos que "aparentemente había dejado en vigor" la demanda contra tercero, ya que la sentencia parcial no es clara en ese sentido: La misma, en lo pertinente, expresa: ". . . se dicta sentencia desestimando la demanda *y decretando el archivo de este caso*". (Énfasis suplido.)

(4) Debemos recordar, sin embargo, que la facultad de un tribunal para enmendar *nunc pro tunc* una sentencia que ha dictado se refiere a enmiendas para corregir errores de forma. *Security Ins. Co.* v. *Tribunal Superior*, 101 D.P.R. 191, 205 (1973).

exigidos por la Regla 43.5 de las de Procedimiento Civil según la expusimos en *Asociación de Propietarios* v. *Santa Bárbara* Co., 112 D.P.R. 33 (1982).

Resolvimos en dicho caso que la referida Regla 43.5 debe leer de la siguiente forma:

> *Cuando un pleito comprenda más de una reclamación, ya sea mediante* demanda, reconvención, demanda contra coparte *o demanda contra tercero* o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, *siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes* hasta la resolución total del pleito, *y siempre que ordene expresamente que se registre sentencia.*

> Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que a ella respecta los términos dispuestos en las Reglas 47, 48 y 53.

> En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones y los derechos y obligaciones de todas las partes. (Énfasis suplido.) Págs. 39–40.

En el citado caso de *Asociación de Propietarios* v. *Santa Bárbara Co.*, supra, se radicó una demanda contra varios demandados; el tribunal de instancia desestimó la demanda contra dos de los demandados; el demandante recurrió ante este Tribunal mediante un recurso de *certiorari*; los recurridos alegaron que dicha determinación no era revisable por cuanto no se cumplió con los requisitos requeridos por la referida Regla 43.5.

Resolvimos precisamente que:

. . . En nuestra jurisdicción no existe una política judicial contra la apelación de decisiones interlocutorias. Prueba de ello la encontramos en el fecundo desarrollo jurisprudencial del recurso apelativo de *certiorari* clásico. Como remedio extraordinario de ámbito abarcador y sin sujeción a tecnicismos procesales permite, en casos apropiados y meritorios, la intervención de un tribunal de superior jerarquía para conjurar los errores procesales cometidos.

*Teniendo presente la existencia de este recurso somos de opinión que la Regla 43.5 no tiene el efecto de impedir toda intervención del Tribunal Supremo con una sentencia parcial* adjudicando la totalidad de una reclamación en particular en un pleito de reclamaciones múltiples o la totalidad de los derechos y obligaciones de una parte en un pleito de partes múltiples, *cuando dicha sentencia no es final por no contener la certificación requerida. Sólo impide que se vea por apelación o revisión, mas no obsta que pueda examinarse mediante certiorari como cualquier otra resolución interlocutoria.* La referida regla no puede interpretarse de forma tal que limite la facultad que la ley otorga a este foro.

Recapitulando, la Regla 43.5 no impide el ejercicio de la facultad jurisdiccional discrecional apelativa. El efecto práctico de la interpretación de la regla que adoptamos en nuestra jurisdicción es permitir que el tribunal de instancia motu proprio o a petición de parte proceda, expresamente y en casos apropiados, a concluir que no existe razón para posponer dictar su sentencia, ordene certificar la finalidad de su dictamen parcial y con ello obligue a la parte perdidosa, si lo estima procedente, a iniciar los trámites posteriores apelativos contra la sentencia, so pena de que ésta advenga firme. Con ello se evita dilatar y posponer la solución del pleito. (Énfasis suplido.) Págs. 42–43.

En el día de hoy resolvemos, en virtud de las disposiciones expresas de la citada Regla 43.5, que en un caso como en el presente en donde el tribunal de instancia al desestimar, mediante la orden de fecha 27 de abril de 1982 enmendatoria de la sentencia parcial de fecha 12 de abril de 1982, la demanda contra tercero no concluyó expresamente

que no existía razón para posponer el dictar sentencia sobre las partes afectadas por la sentencia y al no disponer expresamente que se registrara la misma, dicha sentencia parcial enmendada nunca advino final y firme y, por lo tanto, puede ser objeto de un recurso de *certiorari*. Este recurso no tiene término fijo dentro del cual deba interponerse. Véanse: *Sierra* v. *Pedro A. Pizá, Inc.*, 82 D.P.R. 303 (1961); *Asociación de Propietarios* v. *Santa Bárbara Co.*, supra; y *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 904 (1960).

Tomando en consideración que el tiempo transcurrido no es excesivamente largo y, por lo tanto, la parte demandada, a nuestro juicio, no ha incurrido en incuria y en vista de las circunstancias y los hechos específicos del presente caso, ejercemos nuestra discreción y resolvemos entender en el recurso radicado.

Como sabemos el demandante Delbert D. Dumont en la demanda que radicara sobre sentencia declaratoria solicita del tribunal que "declare la existencia de un contrato entre las partes" y "ordene a la parte demandada [la dueña del edificio, Inmobiliaria Estado, Inc.] a otorgar las escrituras de compraventa con la parte demandante"; en otras palabras su posición es a los efectos de que se llegó a perfeccionar un contrato válido entre él e Inmobiliaria Estado, Inc. y solicita el cumplimiento específico de dicho contrato.

¿Quedó obligada con el demandante Dumont la demandada Inmobiliaria Estado, Inc. por la actuación errónea y/o *ultra vires* de la tercera-demandada Caribbean Properties Ltd.? Resolvemos que no.

La carta de fecha 18 de agosto de 1981 que le envió la señora Drouyn, vicepresidenta de la tercera-demandada Caribbean Properties Ltd., al demandante Delbert D. Dumont aparenta ser, más que una oferta de venta formal como alega que lo es la parte demandante-recurrida, una carta tipo circular de carácter informativa y preliminar, según la posición que sostiene la demandada-recurrente.

Vemos, por ejemplo, que en dicha carta se dice que *el*

*motivo de la misma* es el notificarle a aquellos inquilinos que estén interesados en comprar, que se van a vender los apartamentos y se les pide a éstos que, en la eventualidad que estén interesados, se comuniquen con Caribbean Properties Ltd. *para informarle los detalles de la venta.* Es cierto, sin embargo, que se indica en dicha carta que el precio de venta es de $66,000; pero, por otro lado, se habla de "apartamentos" y no del "apartamento". (⁵)

Nos parece que, como en tantas ocasiones sucede, en relación con ambas posiciones se pueden esgrimir buenos y válidos argumentos; ello quizás sea la razón principal por la cual nuestra profesión de abogado sea tan interesante y atractiva.

■ No es necesario, sin embargo, en el presente caso el entrar en la discusión y eventual solución de dicho punto. Es de rigor señalar que el contrato celebrado entre la demandada Inmobiliaria Estado, Inc., y la tercera-demandada Caribbean Properties Ltd., es el que corrientemente se denomina como "contrato de corretaje". Este es un contrato sui géneris que no está regulado expresamente en nuestro Código Civil. Castán en su obra *Derecho Civil Español, Común y Foral* (⁶) expresa que:

> El contrato de corretaje se ha de regir por las normas establecidas por las partes (sentencia de 18 de octubre de 1956), y, en su defecto, como el Código civil no lo regula en particular, habrá que suplir el vacío legal aplicando las disposiciones generales contenidas en los títulos I y II del libro IV del mismo Código (sentencias de 10 de enero de 1922 y 28 de febrero de 1957), los usos y costumbres propios de su naturaleza, cual se previene en los arts. 1.258 y 1.287 de dicho Cuerpo legal (sentencia de 28 de febrero de 1957), *y, en cuanto en cada caso puedan ser oportunas, las reglas que le sean*

---

(⁵) Este hecho, el cual discutiremos más adelante, debió poner sobre aviso al señor Dumont, pues es un hecho patentemente claro que su apartamento no es igual que los demás y, por lo tanto, no era lógico que se vendiera al mismo precio que los demás apartamentos.

(⁶) 10ma ed., Madrid, Ed. Reus, 1977, T. IV, pág. 543.

*afines de aquellos contratos típicos con los que guarda íntima relación, como el mandato,* la comisión mercantil y el arrendamiento de obras y servicios (sentencias de 8 de febrero y 18 de octubre de 1956). (Énfasis suplido.)

En *Torres* v. *Arbona, Jr.*, 72 D.P.R. 769, 776 (1951), este Tribunal expresó que: "El contrato de corretaje no es sino una figura jurídica, una especialidad comprendida en el mandato, por cuyas genéricas disposiciones ha de regirse."

Siendo ello así, cobran singular importancia en la solución de este caso los Arts. 1605 y 1618 del Código Civil de Puerto Rico.

Disponen dichos artículos lo siguiente:

Art. 1605 — El mandatario no puede traspasar los límites del mandato. 31 L.P.R.A. sec. 4426.

Art. 1618 — El mandante debe cumplir todas las obligaciones que el mandatario haya contraído dentro de los límites del mandato.

En lo que el mandatario se haya excedido, no queda obligado el mandante sino cuando lo ratifica expresa o tácitamente. 31 L.P.R.A. sec. 4461.

■ De manera, pues, que, aun en la alternativa de que consideremos la carta enviada por la señora Drouyn al demandante Dumont como una oferta formal de venta, Inmobiliaria Estado, Inc. no quedó obligada con el referido demandante por la actuación errónea y *ultra vires* de Caribbean Properties Ltd., por la sencilla razón de que esta última se excedió en los límites del "mandato" y/o encomienda recibida de parte de Inmobiliaria, y ésta no queda obligada al no haber ratificado dicha actuación ni expresa ni tácitamente. [7]

Sólo resta el considerar la responsabilidad, si alguna, de Caribbean Properties Ltd., para con el demandante Dumont por razón de haberse excedido en el "mandato" reci-

---

[7] El resultado a que llegamos hace innecesario la discusión del "error como vicio del consentimiento". Arts. 1217 y 1716 del Código Civil de Puerto Rico.

bido en virtud de las disposiciones del Art. 1616 de nuestro Código Civil. Dispone el citado artículo que:

Art. 1616 — El mandatario que obre en concepto de tal no es responsable personalmente a la parte con quien contrata sino cuando se obliga a ello expresamente o traspasa los límites del mandato sin darle conocimiento suficiente de sus poderes. 31 L.P.R.A. sec. 4448.

El comentarista Scaevola expresa que:

. . . si el mandante contesta o impugna el negocio jurídico concluido por el mandatario con el tercero, aduciendo el exceso de los límites impuestos, es justo que el mandatario, que ha tratado con engaño al tercero, sea responsable personalmente respecto de él de las consecuencias de tal falta de aceptación por parte del mandante. Tal responsabilidad del mandatario se informa en el principio de la falta de garantía de la existencia del mandato y de la cualidad del mandatario, garantía impuesta coactivamente por la ley, que quiere que aquel que contrata como mandatario esté obligado a garantizar al tercero la efectiva existencia de los poderes que afirma se halla investido, *siempre que el tercero mismo sea de buena fe.* Efecto de tal garantía es el resarcimiento de los daños causados al tercero como consecuencia de la negativa del mandante a reconocer lo actuado por el mandatario.[8] (Énfasis suplido.)

De manera, pues, que resulta necesario determinar, primero, si el demandante Dumont es un "tercero de buena fe" y, en segundo lugar, qué daños, si algunos, sufrió éste como consecuencia de la actuación *ultra vires* de Caribbean Properties Ltd.

Sin ánimo de prejuzgar la cuestión de la buena fe —en vista de que por las razones que expresaremos más adelante el tribunal de instancia tendrá que pasar sobre ello— nos llama la atención el hecho de que, como dijéramos anteriormente, la carta de la señora Drouyn al demandante Dumont habla de "apartamentos" y no del "apartamento".

---

[8] Q. M. Scaevola, *Código Civil*, T. 26, Vol. II, 1951, págs. 358–359.

Nos parece lógico el argumento a los efectos de que una persona razonable ha podido percatarse de que existía la posibilidad de un error en la carta en cuanto al precio de venta mencionado, dado el caso de que el apartamento del demandante Dumont es único y muy distinto a los demás, ya que su cabida es de casi el doble de los demás apartamentos, ello debido a que dicho apartamento ocupa todo el noveno piso del edificio en cuestión cuando en los demás pisos hay dos apartamentos. Siendo ello así, el precio del apartamento ocupado por el señor Dumont no podía ser el mismo que el de los demás apartamentos.

Entendemos, sin embargo, que la cuestión de la buena fe y la de los daños, si algunos, sufridos por el señor Dumont con motivo de la actuación no autorizada de Caribbean Properties Ltd., deben ser dilucidados, en primera instancia, por el Tribunal Superior de Puerto Rico, Sala de San Juan, (⁹) por cuanto consideramos que al señor Dumont se le debe brindar la oportunidad de presentar la prueba que tenga respecto a ello.

Por las razones antes expresadas, *se expide el auto y se dictará sentencia en que se revoque la orden y/o resolución emitida por el tribunal de instancia de fecha 27 de abril de 1982 mediante la cual enmendó nunc pro tunc la sentencia parcial de fecha 12 de abril de 1982; se desestima la demanda original radicada por Delbert D. Dumont contra Inmobiliaria Estado, Inc., imponiéndole a la parte demandante el pago de la suma de $3,000 por concepto de honorarios de abogado, más las costas y gastos en que haya incurrido la referida demandada; y se devuelve el caso al tribunal de instancia para procedimientos ulteriores compatibles con la presente opinión y sentencia.*

El Juez Asociado Señor Dávila se inhibió. Concurren en

---

(⁹) Caribbean Properties Ltd. fue traída al pleito por Inmobiliaria Estado, Inc. para "... responder directamente a la parte demandante ...". En virtud de ello y de las disposiciones de las Reglas 1 y 12.1 de las de Procedimiento Civil es procedente la devolución del caso al tribunal de instancia.

el resultado sin opinión los Jueces Asociados Señores Díaz Cruz y Negrón García.