**SATELLITE BROADCASTING CABLE, INC., et al., Plaintiffs,**

**v.**

**TELEFONICA de ESPAÑA, S.A. and Telefonica International, S.A., Defendants.**

**Civ. No. 90–1662(PG).**

United States District Court, D. Puerto Rico.

Feb. 10, 1992.

---

José A. Axtmayer, Santurce, P.R., for plaintiffs.

Arturo García, San Juan, P.R., for defendants.

## OPINION OF THE COURT

PEREZ–GIMENEZ, District Judge.

### I. Procedural Posture

This action arises out of a Joint Venture Agreement ("Joint Venture," "Venture," "Agreement") which envisioned the creation of Spanish language television news programming for transmission via cable television for broadcast to audiences across the United States. As more fully set out below, the parties to the ill-fated Venture had, to put it mildly, a parting of ways and were thus unable to successfully close the

Agreement. From such dispute rapidly ensued the present action, which was commenced by the filing on May 15, 1990, of a summons and verified complaint. Soon thereafter and pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a First Verified Amended Complaint was filed as of right on June 25, 1990 ("Complaint"). This last, the operative pleading in this case, finds Mr. Franklin Delano–López and Patricia O'Reilly (Mr. Delano–López' wife) (both residents and domiciliaries of the Commonwealth of Puerto Rico and citizens of the United States), the conjugal partnership between them, Satellite Broadcasting Cable, Inc. ("Satellite"), Multimedia Television, Inc. ("Multimedia"), and Spanish Television News Network, Inc.[1] (the still-born, projected offspring of the proposed Venture) ("STNN"), alleging a battery of actions sounding in primarily in contract, tort and general corporate law against Telefónica International (allegedly a corporation wholly owned by Telefónica España and incorporated according to the laws of the Principality of Luxembourg) ("International") and Telefónica España (a corporation allegedly incorporated pursuant to the laws of the Kingdom of Spain) ("Telefónica").

Two are the dispositive motions before this Court today: International's Motion to Dismiss Third and Fourth Causes of Action ("International's Motion To Dismiss") and Telefónica de España, S.A.'s Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Telefónica's Motion to Dismiss").[2] Both motions present the

---

1. Mr. Delano–López is and was, at all relevant times, President of Satellite, Multimedia and STNN.

2. A Third Motion to Dismiss by Telefónica de España, S.A., for Insufficiency of Service of Process was filed with this Court on August 3, 1990. This prompted a quick response by plaintiffs. *See* Reply to Informative Motion Regarding Answer to Verified Amended Complaint ("Plaintiffs' Reply"), filed on July 13, 1990. They stated: "[P]laintiffs have never indicated or admitted that they must again serve process on said defendant ... [rather we have] simply chosen to serve process on Telefónica International through all methods provided by the joint venture agreement and the applicable law." *Id.,* ¶ 8.

The controversy that ensued proved a fertile breeding ground for facile motions on both sides. It came, however, to a sudden death during oral argument held before this Court on June 21, 1991. Robert F. Wise, co-counsel for defendants, explained that "Both Telefónica International and Telefónica de España have appeared" and added that "Telefónica de España has a motion to dismiss, but not a motion on jurisdiction." Transcript of Hearing on Oral Argument before this Court dated June 21, 1991 ("Transcript"), at p. 26, lines 13–17. This Court then inquired whether Telefónica had filed a motion for insufficiency of process, to which Mr. Wise responded: "No your Honor, service of process was made under the Hague Convention, and has been completed *and we don't*

same frontal attack on plaintiffs' complaint: namely, that the complaint states no cause of action for which relief can be granted.

■ Before unraveling and presenting the facts in a coherent fashion, this Court lays the foundation from which it proceeds to analyze this case. In deciding the success or failure of defendants 12(b)(6) motions to dismiss, the task that befalls this Court does not call for a credibility assessment or even weighing of the evidence. Rather, this Court must don a different, less flexible, and restrictive judicial robe. Only where plaintiffs allegations are so inadequate that they render plaintiffs unable to prove any set of operative facts in support of their claim, may this Court take the extraordinary measure of dismissal for failure to state a cause of action. *See Morales Borrero v. López Feliciano*, 710 F.Supp. 32, 33 (D.P.R.1989). With this in mind, the Court delves into a summary of the salient facts of this case.

## II. Relevant Factual History

According to plaintiff's complaint, on or about March of 1988, Mr. Delano–López and Telefónica, a corporation incorporated pursuant to the laws of the Kingdom of Spain, met to discuss the viability of a spanish news programing service to be incorporated pursuant to the laws of Puerto Rico under the name of Spanish Television News Network. The proposed enterprise envisioned the transmission of spanish programming through cable television to audiences across the nation. Following extensive negotiations, the parties entered into a Venture Agreement on September 27, 1988. Complaint at ¶¶ 11–15.

Although the pleadings are bereft of detail as regards the negotiations that ensued, plaintiffs highlight, in broad strokes, the prominent features of the Joint Venture. According to plaintiffs, the Agreement foresaw (1) the purchase by an affiliate of Telefónica and International[3] of 18,000 shares of class B Stock in STNN for $2.5 million, (2) the purchase by Satellite of 77,000 shares of Class A stock of STNN in exchange for equipment and cash, and (3) that Telefónica, International and Satellite would seek and obtain *as condition precedent ("obligación suspensiva") to closing of the contract* "... financing approval to acquire the necessary equipment for the successful operation of the Venture...." Complaint, ¶¶ 15–16 (emphasis ours). Finally, the Joint Venture required the above mentioned parties to "use their best efforts" in closing the Agreement. *Id.*, ¶ 17; *see also*, Joint Venture Agreement at p. 27, § 12.02.

As may be anticipated by the reader, the Agreement was never consummated. Initially, both parties agreed to postpone the closing to October 31.[4] *Id.*, ¶ 19. In turn, this date was relegated to November 15. *Id.*, ¶ 20. Finally, on November 18, Mr. Delano–López was informed that the Joint Venture was terminated as of November 15. *Id.*, ¶ 22. However, negotiations sprung to life once more on February 1989 and a new closing date was set for April 15. *Id.*, ¶ 24. According to plaintiffs, on May 4, Mr. Delano–López contacted defendants—following the collapse of loan negotiations with Banco Central, a bank interested in the Venture—and informed them that Satellite had contacted the firm of Donaldson, Lufkin, Jenrrette, which had shown interest in the Venture. *Id.*, ¶ 26. Mr. Delano–López requested that a representative of Telefónica and International be present at the negotiations but, according to the pleadings, defendants never answered such petition. *Id.* On June 5, Mr. Delano–López sent a letter alleging a breach of the Joint Venture and giving defendants ten days to reach an agreement after which

---

*challenge it."* Transcript at p. 26, lines 18–22. Defendants having submitted voluntarily to the jurisdiction of this Court, the question of jurisdiction and sufficiency of process is moot.

3. Plaintiff utilizes the abbreviation "Telefónica" to refer both to Telefónica España and Telefónica International. We eschew such usage if for

no other reason that it confounds rather than facilitates the determination of the case before this Court.

4. In their Complaint, plaintiffs allege that it was Telefónica and International who requested the postponement. Whether or not this was the case, it is irrelevant to the case at bar.

**1094**

legal proceedings would be initiated. *Id.*, ¶ 27.

Plaintiffs allege seven causes of action sounding, primarily, in contract, tort and general corporate law. The first five causes are contractual in nature: the first and second are straight forward breach of contract claims (best efforts); the third alleges failure to negotiate in good faith; the fourth and fifth, breach of fiduciary duty; the sixth seeks injunctive relief; and, finally, the seventh alleges tortious interference with contract. Complaint, ¶¶ 30–59. Defendant seeks (1) damages to the tune of $100,000,000.00 (plus interest, costs and attorney fees), (2) affirmative injunctive relief "prohibiting defendants from continuing to violate the provisions of the Joint Venture Agreement," and (3) trial by jury on all issues. *Id.*, ¶¶ 60–61 and p. 14.

## III. Conclusions of Law

### A. A Joint Venture Subject To Condition Precedent Is Not An Executed Contract Under Puerto Rico's Civil Code And Applicable Case Law

This Court would like to proceed by first ridding this litigation of parties that constitute surplus baggage. In its motion to dismiss, International argues that all causes of actions asserted by Mr. Delano–López, Ms. O'Reilly, the conjugal partnership between them, Multimedia and STNN must be dismissed, as they are not entitled to redress even if the allegations are taken to be true. Only Satellite, International contends, "entered into any contractual relationship with either defendant." International's Motion to Dismiss, pp. 16–18. International concedes however, that the third cause of action "appears to leave room to bring Mr. Delano–López, his wife, the conjugal partnership between them, Multimedia and STNN." International's Motion to Dismiss, p. 17. Because both defendants and plaintiffs alike proceed from a false assumption, namely, that a contract existed between them as of the moment in time that the Venture Agreement was signed, this Court has no other alternative than to address the contract issue first.

Simply stated, the crux of the dispute is whether a joint venture agreement subject to a condition precedent ("obligación suspensiva," as our civil tradition brethren teach us) ripens into a contract at the time the agreement is signed or only when such condition comes to fruition. The parties to this litigation work from the assumption that a joint venture agreement subject to a condition precedent constitutes a contract between its signatories. Based on this specious premise, an edifice with unmistakably shaky foundations is erected.

The mortar that holds the structure together is, according to International, provided by two recent Puerto Rico Supreme Court cases, *Muñiz v. Copan*, 113 D.P.R. 417 (1982) and *Milton Torres v. Nora García*, 87 J.T.S. 105, 5200 (1987), which assertedly define the scope of the pre-contract duty to negotiate in good faith, and limit the latitude otherwise enjoyed by courts in expanding "limitations on a party's otherwise broad freedom not to contract." *See* International's Motion to Dismiss, p. 12 *citing, Milton Torres, supra*, at 5206. Defendant interprets *Muñiz* and *Milton Torres* as standing for the proposition that no post contractual duty of good faith exists other than that which is reduced to the four corners of the contract. Defendant states: "International accepts that after a contract is signed the parties may owe each other a general duty to act in good faith and to use their best efforts. *Such duties, however, arise from the terms of the contract.*" *Id.*, p. 11, n. 2.

As a prophylactic measure geared to prevent the extension by this Court of the duty of good faith to cover post contractual negotiations, defendant underscores the holding of *Milton Torres*. In *Milton Torres*, the Supreme Court held that limitations on a party's right not to contract, as defined by the *Muñiz* court, should not be extended to other areas. Defendant interprets this holding as substantiating its view that no post contractual duty of good faith exists. For this Court to find that a duty of good faith is applicable not only to pre-contractual negotiations but also to post contractual behavior, it would have to

traverse the dimly lit path of defining state law. However, this Court does not find itself in such quandary today, for the underpinning of the parties' argument, namely, that a joint venture agreement subject to a condition precedent constitutes a contract, disappears in the quicksand of *Henna v. Saure & Subirá*, 22 P.R.R. 776, (1915) *affirmed*, 237 F. 145 (1st Cir.1916); and 31 L.P.R.A. § 3042.

Although not referred to by the same terminology, the Civil Code recognizes explicitly the existence of conditions precedent under the rubric of conditional suspensive contracts ("obligaciones suspensivas"). As defined by the Civil Code, this type of obligation "depend[s] upon the event constituting the condition." 31 L.P.R.A. § 3042. In other words, conditional obligations, by nature, limit the ripening of certain contractual rights to the occurrence of the particular condition.

This much was clearly recognized by the Supreme Court of Puerto Rico in *Henna*. Citing Scaevola, Volume XXIII, pp. 321–323, the Court stated:

> Article 1255 [the civil Code antecedent of 31 L.P.R.A. § 3372] provides that in all civil cases of contract the contracting parties may make such agreements and conditions as they may deem advisable, provided they are not contrary to law, morals, or public policy. * * * [W]hen the volition of the parties with regard to the effectiveness of the contract and, of course, to the essential element of its perfection is incorporated in a condition, *it is plain that so long as the condition is not realized; and as the volition is the contract within the purest consensual sense, it is clear that there is no contract because the element of consent is not perfected and the perfection of consent is consubstantially the perfection of the contract.* (Emphasis ours).

*Henna*, 22 P.R.R. at 785.

■ The implication of *Henna* for our case is translucent: a contractual agreement subject to condition precedent remains a mere flimsical potentiality (or, conceptually speaking, a pre-contract) until such time as the condition(s) precedent(s) is satisfied. *See, e.g., Amy v. El Registrador de la Propiedad*, 21 P.R.R. 114, 118–19 (1914) (In conditional obligations, "according to article 1113, the condition is an uncertain event ... The condition may or may not suspend the contractual relation, *having the effect that it may or may not exist.*" (Emphasis ours). This much is also recognized by *Meléndez v. Jiménez Realty, Inc.*, 98 P.R.R. 872, 877 (1970), where, citing Manresa, Vol. VIII–1, Comentarios Al Código Civil Español, p. 367, the Court states: "If the suspensive condition is complied with, the obligation appears ... If ... it is not performed, the bond of law does not appear...."

■ It may be that the parties confound suspensive conditional obligations (contracts subject to condition precedent) with resolutory contracts (contracts subject to condition subsequent) ("obligaciones resolutorias"). The latter are considered fully enforceable *ab initio, see, e.g., Armenazaga v. Agudo*, 67 P.R.R. 6 (1947), while the former only give rise to obligations on the occurrence of the condition precedent. Resolutory contracts, that is, contracts subject to conditions subsequent, arise, for example when the parties, having reached an agreement on all the terms of the contract, postpone its consummation to a subsequent date certain, *see, e.g., Alvarez v. Manzano*, 66 P.R.R. 344 (1942). This is not the case today for this Court finds that the contract before it, namely, a joint venture agreement subject to a condition precedent, is akin to a suspensive obligation and does not come to fruition until the condition precedent is met.

■ In light of our holding, the teaching of the *Muñiz* case acquires even more significance than initially ascribed to it by the parties. Because no joint venture contract exists until a condition precedent is complied with, the negotiations were, at all relevant times, pre-contractual in nature and subject to a duty of good faith, *see Muñiz, supra*, and best efforts, pursuant to the terms of the Joint Venture Agreement. *See* Joint Venture Agreement, at p. 27, § 12.02.

### B. Defendant's Motion To Dismiss Third And Fourth Causes Of Action And All Claims By Plaintiffs Other Than Satellite

#### 1. Claims By Plaintiffs Other than Satellite

It is now proper for this Court to determine the real parties to the contract and eliminate any that constitute mere surplusage. Although a total of six plaintiffs assert causes of action against Telefónica and International, the pleadings disclose that only four were the parties allegedly present at the negotiations: Mr. Delano–López, Satellite (we presume attended by and through the person of Mr. Delano–López, its president), Telefónica and International.[5] Of these, only Satellite and International were signatories to the Joint Venture. In their Complaint, plaintiffs allege that all discussions and negotiations, including the "terms, conditions and execution" of the Venture Agreement, involved officers and employees of Telefónica. Complaint, ¶ 29. As stated before, at this stage in the life of this proceeding, it is not for this Court to pass on the veracity of this assertion; this Court simply accepts it for purposes of determining whether to strike one or more of the plaintiffs.

■ This Court finds that only those persons involved in the negotiations in their individual capacity, and which subsequently became signatories to the ill-fated Joint Venture, may state a claim for which relief can be granted. This holding achieves two purposes. First, it recognizes that although local law allows an action by an aggrieved third party not signatary to the contract for "contracts in the prejudice of third persons" (awk.), see, Dennis v. City Federal Savings, 88 J.T.S. 52, 5795, Official Translation, at p. 1, attached as Exhibit 1 ("third party contractual damages"), precontractual obligations do not extend to third parties not part of the contract. Second, it grants relief to those parties actually involved in the negotiations while withholding relief from those either not truly involved in the process or those which are mere mirror images of those involved.

At the outset, we look to the final authority on the issue: The Supreme Court of Puerto Rico. In Dennis v. City Federal Savings, 88 J.T.S. 52, 5795, citing Art. 1209 of the Civil Code, 31 L.P.R.A. § 3374, the Court stated: "It is a statutory principle that contracts shall only be valid between the parties who execute them and their heirs." See Official Translation of Dennis, at p. 11 (the Court will hereinafter cite to pages in this official unpublished translation). An exception to this rule recognizes that third party contractual damages may be recovered when the contract results in prejudice to third persons: 'The so called "contract in the prejudice of third person" falls within the exceptions to the general principle of the relative efficacy of contracts and is one of the assumptions wherein a contract would affect third persons.' Id., at p. 11.

In determining whether a party is entitled to redress for third party damages, local courts utilize a four pronged litmus test: "(1) that a person has been affected; (2) that said third person has sustained injury; (3) that a causal nexus exists between the injury and the contract; and (4) that there is intent to cause injury, either by both contracting parties or by only one of them." Id., pp. 12–13.

■ This Court need not determine today whether these criteria are met in the case at bar. From Dennis it is translucent that liability flows to third parties only in such cases where there is a contract. When there is no contract, no third party liability exists. Spanish Commentator Diez Picazo y Gullón explains:

> This appellative [contract in the prejudice of a third person] refers to the hypothesis where *at the execution of a contract, and precisely because of its execution,* the contracting parties cause harm to a third person, whether they both did so knowingly or just one of them wished to do or was aware of the harm. (Citations omitted and emphasis ours.)

---

**5.** STNN was not and could not be present at the negotiations for its existence as the creature of the Joint Venture was predicated on the closing of the same, an event that never took place.

Diez Picazo y Gullón, "Sistema del Derecho Civil," Vol. 11, p. 108 (1982).

▮ Based on the above, this Court finds that no third party liability flows from a joint venture subject to condition precedent because such agreement does not constitute an executed contract, as such term is defined by local civil law. It is thus incumbent for this Court to grant defendants petition to dismiss all causes of action by such plaintiffs as cannot maintain an action for violation of the pre-contractual duties to negotiate in good faith and use best efforts, namely, Mr. Franklin Delano–López,[6] Ms. Patricia O'Reilly and the conjugal partnership between them. Because the Joint Venture never came to fruition, STNN never came into existence as the creature of the consummated Venture and, therefore, any cause of action brought assertedly on its behalf must, *per force*, be dismissed.

▮ The remaining plaintiffs, however, stand on different, solid ground. It may not be contended, and defendants never allege as much, that Satellite may not recover if it is able to make out a case for bad faith negotiation and failure to use best efforts. Although, admittedly, Multimedia's case is more difficult, this Court is reluctant to and will thus not dismiss Multimedia's causes of action at this stage of the litigation. Multimedia, although not one of the Venturers, apparently played an important enough part in the Joint Venture so as to be included in the "Default" section of the Agreement. *See* Joint Venture Agreement, Article VI, § 6.01. For example, section 6.01(a) identifies, as condition of default, "any representation or warranty or statement made by or on behalf of Satellite ... or ... Multimedia ... [which is] untrue or materially misleading in any material respect when made...."

Perhaps more telling about the essential role played by Multimedia in the Venture is the fact that one of the conditions to International's obligation to purchase the shares of STNN was the tendering by Multimedia of a Form Of Warranty, guaranteeing, among other things, the performance of all of Satellite's obligations. *See* Exhibit F to the Joint Venture Agreement. It is the opinion of this Court, that Multimedia may be able to prove a set of operative facts entitling it to redress for violation of the pre-contractual duty to negotiate in good faith and use best efforts or, alternatively, for third party contractual damages.

2. Defendant's Motion to Dismiss Third and Fourth Causes of Action

▮ Next in our agenda is International's Motion To Dismiss the third and fourth causes of action. Because this Court already has held that negotiations prior and subsequent to the Joint Venture Agreement were pre-contractual in nature (including, of course, the negotiations that ensued after February 1989), International's motion to dismiss the third cause of action must be denied.

International's motion to dismiss the fourth cause of action is, however, another matter. Plaintiffs contend that Telefónica and International willfully, fraudulently and negligently breached their duty of loyalty, good faith and reasonable care owed to STNN, with whom it enjoyed a fiduciary relationship. Complaint, ¶¶ 44–46. Plaintiffs' fourth cause of action also seems to assert a related but independent cause of action premised on Telefónica's and International's violation of its fiduciary duty to the "Joint Venture." *Id.*, ¶ 46. Neither cause of action states a claim for which relief can be granted for they assume the existence of a fictional fiduciary duty relationship between Telefónica and International on one side and STNN and the Joint Venture on the other.

Fiduciary, Black's Law Dictionary 563 (5th ed. 1979) teaches us, is a term of ancient lineage which dates back to Roman law. Defined as "a person or institution who manages money or property for anoth-

---

**6.** Mr. Delano–López, it is alleged, engaged in direct negotiations with Telefónica. There is no evidence, however, that he did so in his independent capacity. Nor is there any allegation that he suffered injury to his reputation. This Court finds that his negotiating skills were used on behalf and for the benefit of the two corporations involved (and of which he is President) on his side of the deal: Satellite and Multimedia.

er and who must exercise a standard of care in such management activity imposed by law or contract; e.g. executor of an estate; receiver in bankruptcy; trustee," Black's Dictionary also notes that "[t]he status of being a fiduciary gives rise to certain legal incidents and obligations, including the prohibition against investing the money or property in investments which are speculative or otherwise imprudent." *Id.* "Breach of fiduciary responsibility," it admonishes, "makes the trustee liable to the beneficiaries for any damage caused by such breach." *Id.*

The Royal Academy of Spain Dictionary of the Spanish Language (1970 ed.), at p. 616, also traces its understanding of the term to the same Roman roots. It states:

> (From the Latin *fiduciarious*) adj. For. Inheritor or legatee in whom the testator entrusts the transfer of assets to one or more persons.... (Translation ours).

*Id.*

Plaintiffs' naked assertion to the effect that Telefónica and International owe a *fiduciary* duty to STNN, the Joint Venture or, for that matter, Satellite (as is asserted in plaintiffs' fifth cause of action) is conclusory and belied by the facts as pleaded. (Emphasis ours). Plaintiffs argue in a deceptively simple but creative fashion that International and Telefónica are promoters of STNN, and as such, owe each other a variety of fiduciary duties. They score high in creativity but do not hold the upper hand. In support of this illusion, plaintiffs cite generously from Fletcher's Cyclopedia of the Law of Private Corporations for a number of interconnected propositions.

Plaintiffs note that promoters are those entities or persons who "undertake to form a corporation and to procure for it rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do business." Fletcher Cyc Corp. § 189, p. 336. Undeniably, Telefónica, International, Satellite and Multimedia were, at first glance, *promoters* of STNN. In this respect, most state courts have recognized that the term promoter applies to any one who "actively assists in promoting, projec-

ting and organizing the corporation whether as a business or in a single corporate instance is a promoter." *Id.*, at p. 337, and cases cited therein.

From this initial assertion, follows a sequence of well settled legal conclusions. Promoters, plaintiffs correctly assert, bear a fiduciary relation to the corporation they form. Plaintiff's Memorandum in Opposition, at p. 9. The case of *Earl R. Hanson & Associates v. Farmers Coop. Creamery Co.*, 403 F.2d 65, 70 (8th Cir.1968), is cited for the proposition that "when an individual engages in a joint venture of promotion or acts individually as a promoter of a corporation, he occupies a *fiduciary position* with respect to the corporation and its shareholders. He owes a duty of good faith." *Id.* at p. 9 (Emphasis supplied).

Plaintiff's citation of authorities paints only broad generalized strokes that cry out for further refinement; a further refinement which is, ironically, provided by Fletcher's Cyclopedia itself. The rights and obligations of co-promoters are tellingly described by Fletcher:

> Promoters are not necessarily partners of one another.... Some Courts have held that, absent an agency relationship between several promoters, one is not liable, by reason of his promoter status alone, for the improvidence of his co-promoters.... *In order to have any rights as co-promoters against each other, there must be a contract between them....* When promoters have agreed among themselves that one shall pay debts or clear encumbrances, or divide profits, such contracts may be enforced against each other. (Emphasis supplied).

*Id.*, § 191, pp. 346–47.

The elusive nature of the word promoter and the rights and duties implied by it is recognized in Fletcher:

> There is ... no magic in the word 'promoter' which solves the relation of one who takes upon himself the burden of forming a corporation, either to the associates who may enlist with him in the prosecution of the work, or to the corporation in which all their interests will be combined upon its successful completion.

*This relation will depend upon the nature of the work and the contractual relations, either expressed or implied which he assumes with respect to others interested in the common object.* (Emphasis supplied).

*Id.*, § 192, p. 353.

Finally, Fletcher also teaches that it is often of assistance—in delineating the fiduciary duty of promoters—to refer to established principles of trusts. *Id.*, § 192, p. 354. Similarities are so strong, we are told, that as in the case of the express trust, fiduciary relations "may be *in futuro,* executory and revocable until a beneficiary, who is not a mere volunteer, or comes into existence claims under it. The fiduciary relation or trust attaches when *there are parties and a subject matter as to which it may operate....*" *Id.*, § 192, p. 354. (Emphasis supplied).

 From the above summary of applicable law, a few guiding principles can be distilled. Generally speaking, the legal term "promoters" includes entities such as Telefónica, International and Satellite which come together in a Joint Venture for the creation of a corporation, here STNN, that will serve as a vehicle for the accomplishment of their business goals. Promoters, as a matter of law, are bound by fiduciary chains to the prospective corporation. As in the case of trusts, fiduciary relationships may be subject to the occurrence of events *in futuro* and are therefore subject to the contingency of such events in much the same manner as contracts are subject to conditions precedent. However, the nature of their fiduciary relations—to each other as well as to the prospective company—may be subject to contractual obligations.

 Applying these principles to the case at bar, this Court holds that in the case of a joint venture subject to a condition precedent, such condition must be complied with before fiduciary duties ripen. Until such time, no Joint Venture contract exists and no fiduciary obligations arise. Although this Court is not aware of any motion to dismiss the fifth cause of action against International, the same must be dismissed, *sua sponte,* for the same reasons that the fourth cause of action is dismissed.[7]

C. Telefónica's Motion To Dismiss the Complaint For Failure To State A Cause Of Action.

This Court arrives to Telefónica's Motion To Dismiss the first, second, third, and sixth causes of action for failure to state a cause of action for which relief can be granted.[8] It goes without saying that this Court is aware of the importance of this motion. In the world of litigation where parties are locked in a life or death struggle to gain or block access to deep pockets, motions such as the one now before this Court are usually dispositive.

In a nutshell, Telefónica's prayer for dismissal of the Complaint is premised on its assertion that the pleading lacks sufficient facts to warrant the piercing of the corporate veil. In its motion to dismiss, Telefónica stresses that plaintiffs' allegations as regards the alter-ego or mere instrumentality relationship between Telefónica and International are, at best, specious and conclusory. *See generally,* Telefónica's Motion To Dismiss, pp. 9–10, citing, *inter alia,* the recent First Circuit decision in *Correa Martínez v. Arrillaga Beléndez,* 903 F.2d 49, 52 (1st Cir.1990) ("[Courts] need not credit bald assertions, peripatetic circumlocutions, unsubstantiated conclusions, or

---

7. This is not to say that a duty of good faith—a recognized pre-contractual duty under local law, *see Muniz, supra*—as well as a requirement of best efforts—explicitly required by the Joint Venture—may not serve to provide similar redress to that sought by plaintiffs under the guise of fiduciary duties.

8. Telefónica's motion also requests the dismissal of the fourth and fifth causes of action for

failure to state a cause of action. This Court finds that the same reasons that warrant dismissal of these causes of action against International, *see supra,* at p. 26, also militate in favor of dismissal as regards Telefónica.

For the same reasons that International's motion to dismiss the third cause of action was denied, Telefónica's motion to dismiss such cause of action must also be denied.

outright vituperation."). Plaintiffs' assertion to the effect that all negotiations were conducted with officers and employees of Telefónica, it is implicitly alleged, constitutes a proverbial example of a bald assertion that renders the Complaint dismissable pursuant to a 12(b)(6) motion.

This Court need not regurgitate defendant's well constructed argument in favor of dismissal nor plaintiffs' equally meritorious response. This Court simply summarizes the relevant law in this area in order to provide an adequate background for the decision.

 Defendant correctly argues that where a party seeks to pierce the corporate veil allegedly existing between a parent and its subsidiary, such party carries the burden of overcoming, by clear and robust evidence, the "presumption of separateness" enjoyed by a subsidiary and its parent. *See Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980). Thus, until such time as evidence to the contrary overcomes such presumption, a subsidiary is considered a distinct legal entity. *See F.D.I.C. v. Martínez Almodóvar*, 671 F.Supp. 851, 876 (D.P.R.1987). Ownership of all of the stock of the subsidiary, *see de Walker v. Pueblo International, Inc.*, 569 F.2d 1169, 1173 (1st Cir.1978), interlocking directorates, common shareholders and similar names, *see San Miguel Fertilizer Corp. v. P.R. Drydock*, 101 D.P.R. 168, 172 (1973), will not suffice, by itself, to pierce a corporate veil. Rather, factors such as inadequate financing, commingling of assets and control of the day to day operation of the subsidiary are considered crucial in removing the corporate veil. *See* Telefónica's Motion to Dismiss, at pp. 8–9, and cases cited therein.

 Although defendant's recitation of the general law governing the parent/subsidiary presumption of corporate independence is correct and its assertions as regards the evidence necessary to establish allegations of alter-ego or mere instrumentality are accurate, Telefónica loses sight of the nature of their motion. Before this Court is a motion to dismiss. This Court is not concerned with who may ultimately bear the burden of proof; nor is it preoccupied with the evidence that must be established at trial; such concerns are apt during trial and on a motion for directed verdict. This Court merely determines whether, at this point in the litigation and based on the allegations in the complaint, plaintiffs are unable to establish any set of facts that may entitle them to relief. This is not the case today. This Court finds that where pleadings allege that all negotiations leading to a joint venture agreement are carried with a parent corporation, but the agreement is signed by its subsidiary, sufficient facts are alleged to defeat a motion to dismiss by the parent.[9]

In pleading that all negotiations were had directly with officers of Telefónica, but that for reasons known only to Telefónica the Agreement was signed by International, plaintiffs raise the possibility that International was used as an alter-ego, mere instrumentality or agent of Telefónica in order to avoid the jurisdiction of the courts of the Commonwealth of Puerto Rico as well as any potential liability.

 This Court believes that if plaintiffs can establish that International served merely as an agent for Telefónica, the alter-ego and mere instrumentality theories as well as agency principles warrant the piercing of the corporate veil. This Court finds that where a parent uses an independent subsidiary for the sole purpose of signing a joint venture agreement fully negotiated by its parent, the corporate veil can be pierced for purposes of that particular transaction. That a subsidiary may be

---

**9.** In an attempt to bolster the strength of its motion, defendant portrays the Federal Rules of Civil Procedure as a tame but not toothless tiger that patrols the entrance to the courthouse. Telefónica's Motion to Dismiss, at p. 9, *citing Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). This Court finds defendant's characterization of the Civil Rules in general, and, F.R.C.P. 12(b)(6) in particular, very apt. Defendant, however, fails to realize that as one of the tigers that patrols the courthouse, the motion to dismiss for failure to state a cause of action is one of the smaller pups.

an instrumentality for purposes of a single transaction does not make it less of an instrument of the parent corporation, even if such subsidiary is fully independent otherwise.

It is interesting to note that in researching the now "moot" issue of sufficiency of process, this Court encountered a recent, colorful decision discussing the issue of, *inter alia,* jurisdiction over foreign corporations that make use of agent subsidiaries for purposes of doing business in a given forum without submitting themselves to its jurisdiction. But as Mr. Wise, Jr.,[10] correctly pointed out during oral argument:

> ... in this case what is sought to be asserted against the parent is really the liability of the parent for the debts of the subsidiary, and looking at the piercing corporate veil cases, it is some times [sic] difficult to separate out the various theories that are involved, and there are a number of aces, and the case itself is one, that are really jurisdiction cases where the question is, can the parent behold [sic] in the court in a local jurisdiction based upon the operation of a subsidiary, and in fact, is doing business thorough the subsidiary sufficient to permit service.
>
> We say those case are not really germane here ... we think the Court should put aside those cases ... [wherein courts are] ... anxious that companies not be able to avoid responsibility for the injuries that their activities may cause.

Transcript of Oral Argument at pp. 25–26.

This explanation (perhaps one of the reasons for defendant's decision to drop the service of process objections) apparently anticipated that this Court would be likely to come across the strongly worded dicta found in the idiosyncratic and ever colorful opinion of the Court in *Donatelli v. National Hockey League,* 893 F.2d 459, 466 (1st Cir.1990). The First Circuit stated:

> To the extent that a subsidiary enters the forum state as an *agent of the parent, or in circumstances where the parent is exercising unusual hegemony over the subsidiary's operations and*

*has dictated the entry,* or where the subsidiary is a separate entity in name alone, the parent has made a choice to avail itself of the forum benefices. (Emphasis supplied).

*Id.,* at p. 466.

A trilogy of separate theories can be distilled from this legal analysis. The first two form the traditional mainstay approach taken by parties seeking to combat the gnawing jaws of jurisdiction: (1) that the subsidiary is merely an empty shell of the parent, or (2) that the exercise of control by the parent is "greater than normally associated with common ownership and directorship." *See Escudé Cruz,* 619 F.2d at 905 and *Mangual v. General Battery Corp.,* 710 F.2d 15, 21 (1st Cir.1983). The third theory, namely, that an agent-principal relationship exists whereby an independent subsidiary's strings are either being pulled by the parent or when the subsidiary willingly acts as an agent for its parents in a particular transaction, is one of more recent vintage.

Defendant correctly points out that many of the cases regarding the piercing of the corporate veil are, strictly speaking, jurisdictional cases. Purposeful availment of the forum by the parent does not imply, *per force,* that the corporate veil must be lifted insofar as a particular case is concerned. While defendant escapes the grasp of *Donatelli* by simply waiving jurisdictional objections, the specific factual predicate in our case warrants the lifting of the corporate veil.

 It is well settled law that parent corporations and their subsidiaries are legally distinct entities and that a contract under the corporate name of one cannot be treated as that of both. Fletcher Cyc. Corp., § 43 (rev. perm. ed. 1983). The parent corporation will not, absent clear evidence of alter-ego or mere instrumentality, be held liable for the contractual obligations of its subsidiary. *Id.* However, this is not a hard and fast rule. Where a strong showing of control by the parent over the subsidiary renders the latter a

**10.** Co-counsel for defendants.

**1102**

mere instrumentality of the former, the corporate veil can be lifted. *See Tennessee Valley Authority v. Exxon Nuclear Company, Inc.,* 753 F.2d 493, 497 (6th Cir.1985). Lifting the corporate veil, however, must not be made lightly for it constitutes a "drastic decision" exposing to liability a corporate entity that has sought the protection afforded by a separate and distinct corporate form, *cf. Clark Pipe & Supply Co., Inc. v. Associates Commercial Corp.,* 870 F.2d 1022, 1028 (5th Cir.1989); *see also Reflectone, Inc. v. Farrand Optical Company, Inc.,* 862 F.2d 841, 844 (11th Cir. 1989). Plaintiff will bear the heavy burden of establishing that a subsidiary is a mere instrumentality of the parent corporation, *see Escudé Cruz v. Ortho Pharmaceutical Corp. v. P.R. Drydock & Marine Corp.,* 619 F.2d 902, 905 (1st Cir.1980), that such control has been used to commit fraud or other wrong, *see WM Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137 (2nd Cir.1991), and that the fraud resulted in injury to the plaintiff.

Factors usually considered by courts in making this determination are, *inter alia,* gross undercapitalization, nonpayment of dividends, syphoning of corporate funds by the parent corporation, "non-functioning" officers and directors, and absence of corporate records. *Keffer v. H.K. Porter Company, Inc.,* 872 F.2d 60, 65 (4th Cir. 1989). The mere fact that the parent "routinely included the subsidiary's figures in its calculation of overall profits ... made such major decisions as the hiring and replacement [of the subsidiary's] president, ... and the fact that the parent owned all of the subsidiary's stock ..." is not sufficient to ignore the corporate veil. *Topp v. CompAir Inc.,* 814 F.2d 830, 836 (1st Cir. 1987) *citing de Walker v. Pueblo International, Inc.,* 569 F.2d 1169, 1171, 1173 (1st Cir.1978).

 Local law follows similar precepts in determining whether the corporate veil should be lifted. The veil is subject to piercing if, following an investigation of the existing corporate structure, it is determined that one or more of the following criteria exists: that subsidiary shares are wholly owned by its parent, *see Licorería Trigo, Inc. v. Srio. de Hacienda,* 94 D.P.R. 270 (1967), that the nature of the relationship between parent and subsidiary is such that control is obvious, *see Pereira v. I.B.E.C.,* 95 D.P.R. 424 (1967), that directors and officials are shared, *Licorería Trigo, supra,* that nexus exists between shareholders, *J.E. Candal & Co. v. Rivera,* 86 D.P.R. 508 (1962), or that any other strong proof justifying the piercing of the corporate veil exists. *San Miguel Fertil. Corp. v. P.R. Drydock,* 94 D.P.R. 424 (1967).

This Court finds that plaintiffs' allegation to the effect that all negotiations were had with Telefónica and that for reasons known to Telefónica, International was substituted as signatary to the Joint Venture is sufficient to withstand a motion to dismiss. If supplemented by further evidence, the allegations may entitle plaintiffs to relief.

Defendant disingenuously suggests that the *motion to dismiss should be dismissed*—notwithstanding the fact that certain matters now part of the record suggest that there could be a factual basis for plaintiffs allegation—because such matters were not pleaded in the original Complaint. Defendant states: "... it may well be that the matters that [plaintiffs] have now submitted to the Court in the supplement, should have been the basis on an amended pleading in which they could state ... the basis for their alter ego-theory." Transcript of Oral Argument at p. 20, lines 15–21. It is against logic and established procedure for defendant to argue that facts that can only be elicited through documents and depositions obtained in the course of discovery must be plead in detail in order to overcome a 12(b)(6) motion. Were this the import of the Rule, defendants would easily and routinely defeat meritorious claims by simply interposing motions to dismiss for failure to state a cause of action before submitting to discovery. This is simply not the applicable standard. The only question this Court need concern itself with at this point is whether there is any set of operative facts,

based on the pleadings, that may entitle plaintiff to relief. This Court answers this last query in the affirmative.

■ This Court recognizes the possibility that where a parent corporation utilizes its subsidiary as an agent for a particular transaction, exercising strict control insofar as that particular transaction is concerned, the otherwise existent corporate veil is dissolved and renders the parent liable, for that particular transaction, pursuant to (1) the theory of alter-ego or mere instrumentality, and/or (2) principles of agency law. Such a showing would establish, in this Court's opinion, that International was Telefónica's alter-ego, mere instrumentality or agent and would constitute, as required by state law, "any other strong proof justifying the lifting of the corporate veil," *see e.g., San Miguel Fertil Corp. v. P.R. Drydock,* 94 D.P.R. 424 (1967).

This holding is consistent with local, civil notions of agency principles. The local civil jurisprudence categorizes agency as a type of contract wherein "a person binds himself to render some service, or to do something for the account or at the request of another." 31 L.P.R.A. § 4421. The agency relationship may be express or implied "the latter being inferred from the acts of the agent," *Id.,* at § 4422, and may exist as to "one or more specific transactions." *Id.* at § 4424. "When an agent acts in his own name, the principal shall have no action against the person with whom the agent has contracted, nor the said persons against the principal. In such case, the agent is directly liable to the person with whom he has contracted, as if the transaction were his own." *Id.* at § 4426.

This last suggests a situation untenable in a common law system, namely, that where an agent acts on his own name, even though in reality he is no other than the representative of the principal, liability runs to him and not to the principal. Thus, it may be argued that in the case of undisclosed agencies, the agent is solely liable for contracts with third persons and therefore only International is liable to plaintiffs. An old Puerto Rico case seems to suggest as much. In *Quevedo v. Estate of Pino,* 15 P.R.R. 669, 674 (1909), the Supreme Court of Puerto Rico stated: "an agency stated in general terms only includes acts of administration. In order to compromise, alienate, mortgage, or to execute any other act of strict ownership an express commission is required." Of course, in our case, plaintiffs implicitly plead that a specific, not a general agency relationship was created in the signing of the Joint Venture by International on behalf of Telefónica.

The apparent contradiction between the philosophical conception of agency under the civil and common law legal systems is quickly dissipated by the observations of Puig Brutau in his essay "La Representación Voluntaria En Derecho Internacional Privado," 33 Revista del Colegio de Abogados de Puerto Rico 481, 485–86:

> In any case, the truth is that in a common law system, the general rule is that the undisclosed principal has a cause of action against the third party that enters a contract with the agent. By contrast, in the civil law system, the principle of lack of communication [ ] among parties that have no knowledge of each other's existence prevails (i.e., principal and third party in the case of non representative agency), *without prejudice to the fact that the effects of direct representation [liability of the parties] can derive from the fact that the third party knows, as a result from all surrounding circumstances, that he or she is dealing with the principal.* (Translation and Emphasis ours).

Thus, although conceptually speaking the common and civil law traditions differ in that the former recognizes that the principal is liable to third parties while the latter requires knowledge of each other's existence, the result in the case at bar is the same. Because plaintiffs allege that all negotiations took place with Telefónica, those allegations, if proven, imply that plaintiffs had, at all requisite times, knowledge that International was Telefónica's agent.

■ This extensive but mandatory tour of duty through the nuances and intricacies of the local civil law tradition brings us to our conclusion. This Court is convinced that the Supreme Court of Puerto Rico, were it in our shoes, would find that the use of agency as a shield to prevent the piercing of the corporate veil is improper. In our opinion, the allegations before this Court, if proven, would justify the lifting of the corporate veil to prevent an injustice or wrong to plaintiffs as requested by local law. *See San Miguel, supra,* and *Drydock, supra.*

### D. Tortious Interference with Contract

This Court need not address the issues raised by plaintiffs' seventh cause of action, namely, that Telefónica "knowingly and willingly interfered with the contractual relationship existing between International and Satellite," and that such interference constituted tortious interference with contract. Complaint, ¶¶ 57–59. The seventh cause of action was plead in the alternative, just in case this Court were to find that International was not the alter-ego of Telefónica. *Id.* As this Court finds that plaintiffs survive a motion to dismiss because their pleadings succeed in stating causes of action, the Court sees no need to consider the seventh cause of action.

### E. Injunction

■ Finally, plaintiffs demand "[a]n injunction prohibiting defendants from continuing to violate the provisions of the Joint Venture Agreement." Complaint, ¶ 61(b). What plaintiffs disguise as an injunction is really nothing else than a request for an order mandating specific performance of the Joint Venture. Such demand flies in the face of well settled law on the subject. In the case of a contract subject to a condition precedent, an order for specific performance does not proceed until such time as the condition is fulfilled. *Mercedes Busline, Inc. v. Rojas,* 70 P.R.R. 513 (1949). Only a person devoid of all contact with reality could suggest that the condition to the ill-fated Joint Venture will ever be fulfilled. Therefore, the Court declines to issue such an injunction.

### IV. Summary

We sum up briefly. In a joint venture agreement subject to a condition precedent, no contract exists until such time as the condition precedent is complied with. Because no finalized contract existed at the time the parties to this lawsuit signed the Joint Venture, negotiations were, at all relevant times, pre-contractual in nature and subject to the implied duty of good faith as well as the duty to exert best efforts.

Although local law allows a cause of action by third parties not signatories to a contract, pre-contractual obligations do not extend to third parties affected by the contract. As this Court finds that no contract was entered when the parties signed the Joint Venture, the only existing obligations that may, if established, merit redress are pre-contractual in nature. Third parties allegedly aggrieved by the Venture are not entitled to recover. The Court will thus grant International's motion to dismiss all causes of action by Mr. Delano–López, Ms. O'Reilly and the conjugal partnership between them. The Court will also grant International's motion to dismiss all causes asserted by STNN, for its existence as the creature of the Joint Venture was predicated on the closing of the same, an event that never took place.

Because this Court has held that negotiations prior and subsequent to the Joint Venture were pre-contractual in nature, International's motion to dismiss the third cause of action must be denied.

International's motion to dismiss the fourth cause of action will be granted. In the case of a joint venture subject to a condition precedent, the condition must be complied with before fiduciary duties ripen. Because this Court so holds, and even though International has not moved to dismiss the fifth cause of action, this Court also finds that the same reasons that justify dismissal of the fourth cause of action mandate the dismissal, *sua sponte,* of the fifth cause of action.

Telefónica's motion to dismiss the complaint for failure to state a cause of action

is denied. In so holding, this Court merely holds that where pleadings allege that all negotiations were conducted with a parent corporation, but the agreement is signed by its subsidiary, sufficient facts have been plead to defeat a motion to dismiss by the parent.

For the same reasons that International's motion to dismiss the third cause of action is denied, Telefónica's motion to dismiss must also be denied. Telefónica's motion to dismiss also requests dismissal of the fourth and fifth causes of action against it. This Court is of the opinion that the same reasons that warrant dismissal of these causes against International, militate in favor of dismissal as regards Telefónica.

This Court sees no need to consider the seventh cause of action, as the same was plead in the alternative, just in case that this Court found that Telefónica was not International's alter-ego. Finally, the Court declines to issue an injunction mandating the enforcement of the Agreement as it is well settled that contracts subject to condition precedent do not consummate until such time as the condition is fulfilled.

IT IS SO ORDERED.