**TERRADATA, INC., Tommy
R. Habibe, Plaintiff(s),**

v.

**BUDGET RENT–A–CAR
INTERNATIONAL,
INC., Defendant.**

**Civil No. 99–1015 (JAG).**

United States District Court,
D. Puerto Rico.

June 28, 2002.

**102**

Jose M. Carreras, San Juan, PR, Artemio Rivera–Rivera, San Juan, PR, for Plaintiffs.

Pedro J. Santa–Sanchez, Hermann D. Bauer–Alvarez, O'Neill & Borges, San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

In 1999, plaintiffs Terradata, Inc. ("Terradata") and Tommy R. Habibe ("Habibe") filed two Complaints[1] against defendant Budget Rent a Car International ("Budget"). Plaintiffs claim four causes of action: (1) tortious interference with a contractual relationship (99–1015(JAG)); (2) breach of contract (99–1888(DRD)); (3) promissory estoppel (99–1888(DRD)); and (4) *culpa in contrahendo* (99–1888(DRD)). On August 31, 2000, the Court issued an Order in civil number 99–1888(DRD) dismissing plaintiffs' breach of contract claim. Pending before this Court is Budget's motion for summary judgment contending that plaintiffs have failed to show the existence of the requisite elements to establish a tortious interference claim. (Docket 9, 56, 57). Upon review of the record, the Court **GRANTS** the motion.

## FACTUAL BACKGROUND

Auto Servi Inc. ("Auto Servi"), a Puerto Rico Corporation, executed a Franchise Agreement with Budget, a Delaware corporation, in July 1997. At that time, Auto Servi was owned by Yahapi, Inc. ("Yahapi"). Yahapi, in turn, had three stockholders: Habibe; Pedro Gómez ("Gómez"); and, John Stephens ("Stephens"). (Docket 43, Third Amended Complaint, at 2). Soon after the execution of the Franchise Agreement, on December 10, 1997, Habibe sold his 37.5% share in Yahapi and Auto Servi to Gómez, thereby transferring all related responsibilities to Gómez. (Docket 43, Third Amended Complaint, at 2). In January 1998, soon after Habibe's departure from the franchise, Mr. David Pitts ("Pitts"), Budget's Director of Latin America and the Caribbean, contacted Habibe expressing his discontent over franchise business matters and his interest in having Habibe at the helm of the Franchise operations once again. (Id. at 3). Plaintiffs contend that this conversation led to a formal oral agreement whereby Budget pre-approved plaintiffs' acquisition of Budget's local franchise from Auto Servi. (Id.).

Relying on the alleged oral agreement with Budget, on January 15, 1998, plaintiffs signed a Letter of Intent with Auto Servi and Yahapi for the transfer of the Franchise rights ("Letter of Intent"). (Docket 43, Third Amended Complaint, at 3). The Letter of Intent, however, was not an effective contract inasmuch as it was subject to two suspensive conditions in its last clause:

"The execution of the above-mentioned final agreement or agreements shall be

---

[1]. The Complaint in this case (Civil No. 99–1015) was originally assigned to the Honorable Hector M. Lafitte, Chief Judge. Judge Lafitte transferred the case to the undersigned Judge's docket, effective August 1, 2000 (Docket # 47). A subsequent Complaint (Civ. No. 99–1888) was assigned to the Honorable Daniel R. Dominguez, U.S. District Judge. The operative facts giving rise to both Complaints are almost identical.

subject to the approval of the purchase and transfer of the Budget Rent a Car franchise by Budget International Rent a Car. Inc. and the acceptance by Terradata of the terms and conditions requested by Budget International to approve the purchase and transfer of the franchise."
(Docket 9, Exhibit 4, Letter of Intent, at 2). Plaintiffs contend that this language was included notwithstanding Budget's alleged preapproval as a preventive measure shielding Auto Servi and Terradata from reciprocal liability in the event of Budget's breach. In the alternative, plaintiffs aver that the document was thereafter submitted to Budget and that some time later, Habibe received a call from Pitts informing him that Mr. Sandy Miller, Chief Executive Officer of Budget, ("Miller") had reviewed and approved the Letter of Intent. Budget, however, terminated the Franchise Agreement with Auto Servi on February 5, 1998. (Docket 18 at 18). That same month, Pitts called Habibe and told him that Budget was considering intervening in the Franchise operation. (Id). In March 1998, Budget informed plaintiffs that Budget would be rejecting the Letter of Intent and repurchasing the Puerto Rico Franchise. Consequently, plaintiffs brought suit against Budget for tortious interference with the Letter of Intent executed by plaintiffs, Auto Servi and Yahapi. (Docket 43, Third Amended Complaint, at 5).

## III. DISCUSSION

### I. Summary Judgment Standard

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R.Civ.P. 56(c); *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986).

A properly supported motion can be survived only if the non-moving party shows that a trial worthy issue exists. The party opposing the motion cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every controversy is sufficient to preclude summary judgment. The fact has to be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of a suit. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence is "insufficient to defeat a properly supported motion for summary judgment." *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Consequently, in order to defeat the motion, the party opposing summary judgment must present competent evidence supporting its position. *See Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *See Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *See Medi-*

*na–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## II. Tortious Interference Claim

■ Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141, establishes a cause of action for tortious interference by third parties with contractual obligations. To establish a tortious interference claim, plaintiffs must show: (1) a pre-existing contractual relationship with which Budget interfered; (2) that Budget's interference was intentional and with knowledge of the existence of the contract; (3) that the plaintiffs were injured; and (4) that the injury was a foreseeable and direct consequence of the interference. *See General Office Products Corp. v. A.M. Capen's Sons. Inc.,* 115 D.P.R. 553 (1984).

### A. A pre-existing contractual relationship.

■ Plaintiffs assert that the January 15, 1998 Letter of Intent constituted a binding contract and that Budget illegally interfered with the Letter of Intent when it rejected the Letter of Intent and repurchased Budget's Puerto Rico Franchise. Budget, however, disputes plaintiffs' assertion and alleges that the Letter of Intent was not an effective [2] contract inasmuch as it was subject to two suspensive conditions. Budget avers that the first of these conditions was never met, namely, that the effectiveness of the Letter of Intent would depend on its approval by Budget.

■ The Civil Code labels suspensive conditional obligations as those demandable upon the occurrence of a future and uncertain event. *See* 31 L.P.R.A. § 3041–2. *See also Satellite Broadcasting Cable, Inc. v. Telefonica de Espana,* 786 F.Supp. 1089, 1094 (D.P.R.1992) (Suspensive conditional obligations "limit the ripening of certain contractual rights to the occurrence of the particular condition."). A contract subject to a suspensive condition remains a pre-contract until the suspensive condition is met. *See Amy v. El Registrador de la Propiedad,* 21 P.R.R. 114, 118–19, 1914 WL 5044 (1914) (In conditional obligations, "according to article 1113, the condition is an uncertain event ... The condition may or may not suspend the contractual relation, having the effect that it may or may not exist.").

Budget avers that the first suspensive condition was a future and uncertain event inasmuch as Budget was not legally bound to consent to the transfer of the franchise contemplated in the Letter of Intent. Plaintiffs, however, disagree and argue that the first suspensive condition was fulfilled inasmuch as Budget, by means of Pitts, pre-approved the Letter of Intent when Pitts requested Habibe to take over Budget's local franchise from Auto Servi. Plaintiffs further aver that Budget's pre-approval of the Letter of Intent constituted a binding contract between Budget and plaintiffs, or alternatively, a unilateral declaration of will. Plaintiffs conclude that Budget is barred from claiming that the first suspensive condition was never fulfilled inasmuch as a legally binding contract or a unilateral declaration of will existed.

■ This Court has already ruled that although Pitts may have encouraged Habibe to acquire the franchise from Auto Servi, "there is insufficient evidentiary proof that a formal oral contract for a preapproval of the franchise transfer was ever perfected." (Citations omitted). *See* Civil Number 99–1888(DRD), Docket 23 at 9. Furthermore we hold today that the promissory estoppel doctrine is inapplicable to this case. Under our civil system of law whether a unilateral declaration of will is an effective and binding obligation be-

---

2. Puig Brutau, "Fundamentos de Derecho Civil," T. 1, Vol. 2, p. 84 (1998).

tween the declarant and any person who, trusting the declared will, engages in acts consistent with the declaration, is still an open question. *See Gonzalez v. Alicea, Dir. Soc. Asist. Legal,* 132 D.P.R. 638, 653, n. 13 (1993). It is well established, however, that the Civil Code does not recognize the unilateral declaration of will as an effective and binding obligation. *See Cerveceria Corona, Inc. v. Tribunal Superior,* 99 D.P.R. 698, 702 (1971). The Civil Code specifically states that "[o]bligations are created by law, by contracts, by quasi contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs." 31 L.P.R.A. § 2992. Thus, plaintiffs' assertion that Budget's pre-approval of the Letter of Intent constituted a binding legal obligation is without merit. Budget could not have pre-approved the Letter of Intent inasmuch as no contract or legal obligation at the time existed between Budget and plaintiffs. Furthermore, the second suspensive condition of the Letter of Intent required plaintiffs' acceptance of the "terms and conditions requested by Budget International to approve the purchase and transfer of the franchise." It is, therefore, also evident from the second suspensive condition, that the alleged conversation between Pitts and Habibe was not sufficiently concrete and specific to constitute a binding obligation between Budget and plaintiffs.

In the alternative, plaintiffs aver that the first suspensive condition was fulfilled when Pitts called plaintiffs to inform them that Miller had reviewed and approved the Letter of Intent. The Court disagrees. The franchise agreement between Auto Servi and Budget clearly required that any agreement to sell or amend any portion of the contract had to be in writing[3]. Thus, Miller's oral approval of the Letter of Intent did not satisfy the first suspensive condition. Accordingly, the Letter of Intent never exited its suspensive phase, and therefore, never became an effective contract providing a valid foundation for the claim of tortious interference in this case.

## CONCLUSION

In the light of the foregoing, the Court **GRANTS** Budget's motion for summary judgment (Docket 9, 56, 57) and dismisses this action with prejudice. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

3. "LICENSEE agrees that this agreement is personal to LICENSEE and LICENSEE hereby acknowledges the personal confidence BUDGET has in licensee and/or the beneficial owners of LICENSEE as identified in paragraph 11.05 and that neither this Agreement, the equitable or beneficial ownership of LICENSEE or its BRAC business, a substantial portion of the assets of the BRAC business ..., may be voluntarily, involuntarily, directly or indirectly sold, assigned or otherwise transferred by LICENSEE, without the prior written consent of BUDGET.... If LICENSEE or its beneficial owners propose to sell, assign or transfer the Agreement, the beneficial ownership of licensee or its BRAC business ..., LICENSEE agrees that the agreement to sell, assign or transfer (the 'Transfer Agreement') will be in writing and executed by all parties and submitted to BUDGET along with any deposit or transfer fee as referred to in the then current Transfer Guidelines ... LICENSEE agrees that BUDGET, or a party designated by BUDGET, will, for a period of sixty (60) days from the date of its receipt of the Transfer Agreement and all related documents have the first option to purchase same for the price and on the terms and conditions contained therein ... LICENSEE agrees that no amendment or other modification of this Agreement will be valid or binding on either party hereto *unless reduced to writing* and executed by the parties hereto." (emphasis supplied). See Docket No.9, Exhibit 2—Franchise Agreement.