## SATELLITE BROADCASTING CABLE, INC., et al.

### v.

## TELEFÓNICA DE ESPAÑA, et al.

### Civ. No. 90–1662(PG).

United States District Court,
D. Puerto Rico.

April 7, 1992.

Juan Saavedra Castro, San Juan, PR, for
plaintiffs.

Robert Wise, Esquire, New York City and Arturo García, San Juan, PR, for defendants.

## ON RECONSIDERATION

PEREZ–GIMENEZ, District Judge.

### I. Motion to Dismiss

On Motion for Clarification and/or Reconsideration and Memorandum of Law in Support thereof ("Mot. Recons."), plaintiffs request that this Court reconsider its holding that a joint venture agreement subject to condition precedent does not constitute a contract until such time as the condition is complied with. In the alternative, plaintiffs suggest that their Verified First Amended Complaint ("V. Compl.") is sufficient to support a breach of contract cause of action stemming from defendant's alleged voluntary prevention of the fulfillment or satisfaction of the condition precedent. Mot. Recons., p. 6; V. Compl., ¶¶ 21, 31, 32. Finally, plaintiffs contend that regardless of the occurrence of the condition precedent, defendants breached pure unconditional obligations assumed under the Joint Venture Agreement, *see* Mot. Recons., p. 12, and may therefore bring an action for redress of otherwise pre-contractual obligations. This Court reconsiders and, as modified, affirms its earlier opinion, 786 F.Supp. 1089, and grants summary judgment in favor of defendants on the contractual issues and for plaintiffs on the issue of extra-contractual damages.

 The Court picks up where it left off and affirms its previous holding that a joint venture agreement subject to condition precedent is not a contract until such time as the condition obtains. The Court restates its holding that in such instances an aggrieved party may proceed only by filing an action for extra-contractual damages for violation of the duty of good faith. *See Prods. Tommy Muñiz v. COPAN*, 113 D.P.R. 674, Official Translation *("CO-PAN")*. Where the party includes in the contract a best efforts clause, the same will be given effect.

 Plaintiffs are correct, however, in arguing that where a party to a conditional contract impedes the fulfillment of the condition, such condition is deemed fulfilled or satisfied. This much was recognized in *Martin v. Vector Company*, 498 F.2d 16 (1st Cir.1974). In *Martin*, Vector Company ("Vector") entered into an agreement for the purchase of land and development rights owned by plaintiffs. The contract contained a clause exempting Vector from any obligation until such time as a contract was executed with the Puerto Rico Urban Renewal and Housing Corporation—the Commonwealth government agency in charge of reviewing the building plans (together with Housing and Urban Development) and issuing the necessary permits required before a developer can initiate construction.

Vector failed to begin construction on time allegedly due to a delay in obtaining architect plans and specifications. The plans were subsequently received but Vector was unable to obtain construction bids. Plaintiffs sued for specific performance of the contract. Vector opposed plaintiff's prayer for specific performance arguing that the purchase agreement conferred an option contract or, in the alternative, embodied a contract subject to a condition precedent—one that never came to fruition.

The court found that pursuant to Article 1072 of the Puerto Rico Civil Code, 31 L.P.R.A. 3047, a condition precedent is considered fulfilled when the "obligated party" voluntarily prevents its fulfillment. *Id.*, p. 21. In support of this conclusion, the court adopted the reasoning propounded by an early pronouncement of the Louisiana Supreme Court: '... the law does not permit the party whose obligation depends on a condition to allege the non-performance of that condition in defense, where it was through his fault [that] it was not performed.' *Id.*, p. 22; *citing Walls v. Smith*, 3 La. 498 (1832).

 This position enjoys acceptance in the common law system. A condition precedent is excused when an obligor "causes the non-occurrence of the condition." *See* E Allan Farnsworth, Contracts, § 8.6, p. 565 (8th ed..1982), and cases cited therein. The effect of excusing the condition is that

the obligation becomes "absolute." *Id.* In order to regulate inequitable party behavior—particularly as regards party compliance with an existing condition precedent—courts have imposed a duty of good faith and, in some cases, best efforts. *Id.*, p. 566. The duty to exert best efforts requires parties to take affirmative steps towards the fulfillment of the condition. *Id.*

## II. Motion to Dismiss and Summary Judgment

Parties to this lawsuit have submitted a litany of documents in support of their respective motions which have not been excluded by the Court; therefore, this Court now considers their motions to dismiss as cross-motions for summary judgment. The material relevant for a summary judgment determination is presently available before this Court. *See* Defendants' Memorandum of Law in Opposition ("Def. Mem. in Opp'n"); Supplement to Plaintiff's Opposition to Telefónica España, S.A.'s and Telefónica Internacional, S.A.'s Motion to Dismiss in Light of Newly Discovered Evidence ("Suppl. to Pls['] Opp." or "Supplement to Plaintiffs' Opposition"); and Reply in Support of Motion for Clarification and/or Reconsideration ("Pls['] Reply in Supp." or "Plaintiffs' Ripple in Support"). At this point in this the litigation, the Court will treat defendants' motion to dismiss as one for summary judgment. *Whiting v. Maiolini,* 921 F.2d 5, 7 (1st Cir.1991).

### A. *Summary Judgment*

■ Summary Judgment is an effective, razor-sharp sword carefully calibrated to eliminate claims which, as a matter of law, must be decided in favor of one of the parties. In this respect, it resembles closely its siamese brother: the motion for judgment as a matter of law and judgment "no

obstante veredicto," which allow a court to issue a decision on the merits before or after the case is submitted to the jury. *Cf. Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277 (1983).

■ Two cases recently decided by the Supreme Court are particularly instructive on the subject of summary judgment. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that a party moving for summary judgment which does not bear the burden of proof at trial complies with said burden when it establishes the absence of an essential element of the cause of action of the non-movant. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–2554. *Celotex* implicitly disavowed an earlier indication in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970), that a movant is required to disprove plaintiff's case.[1]

In the same term, the Court in *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), explained that material disputes are those that have an effect over the outcome of the litigation; namely those where the evidence presented is sufficient to sustain a verdict for the non-moving party. In evaluating the sufficiency of the evidence, the trier of law makes all reasonable inferences in favor of the non-movant and then proceeds to make a substantive determination of the evidentiary burden imposed by applicable law. *Id.*, at 250, 106 S.Ct. at 2511.

A few guiding principles are easily extracted from the above recitation of the law. Under *Liberty Lobby* the standard of review is whether after resolving all disputes in favor of the non-moving party and drawing all reasonable inferences which are justifiable or reasonable, the non-movant cannot, as a matter of law, obtain a verdict in his favor. 477 U.S. at 249, 255,

---

**1.** This development is far from surprising. Dismissal for failure to state a cause of action is appropriate when pleadings fail to set forth any set of operative facts that may entitle plaintiff to the relief sought. *See Morales Borrero v. López Feliciano,* 710 F.Supp. 32, 33 (D.P.R.1989). Outright dismissal of a claim, however, is often more difficult than the Rule seems to suggest. The motion to dismiss—an early bird in pretrial proceedings—is often the prelude to or is accompanied by a motion for summary judgment. Oftentimes a party will survive a motion to dismiss and then be unable to show—following discovery—that a genuine issue of material fact exists. It is at this point that summary judgment for failure of non-movant to establish an essential element is appropriate.

106 S.Ct. at 2510, 2513–2514. Defendant may discharge this burden by showing that the non-movant is unable to establish an essential element of his cause of action. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–2554. *Liberty Lobby* makes clear that Courts must apply the evidentiary standard that would govern if the case proceeded to trial. 477 U.S. at 250, 106 S.Ct. at 2511.

Succinctly stated, the central issue before this Court is whether the pleadings, together with other accompanying materials, satisfies the proof necessary to support defendants' liability. At trial, the contractual portion of defendants' case stands or falls on plaintiffs' ability to demonstrate, by preponderance of the evidence, that defendants prevented the occurrence of the condition precedent.

 Since soon after the inception of this suit, this Court has remained unconvinced about plaintiffs' ability to establish the contractual nature of the two ill-fated set of negotiations which led to the present dispute. As to the first set of negotiations (which came to an end as of November 15, 1988), plaintiffs contend that defendants prevented voluntarily the fulfillment of the condition precedent by failing to use their best efforts to obtain adequate financing. That plaintiffs allege as much, *see* V.Compl. ¶¶ 21, 32, 33; Suppl. to Pls['s] Opp., p. 11; Pls['s] Reply in Supp., p. 15, does not make it so. These allegations may defeat a motion to dismiss but not a motion for summary judgment, particularly where, as here, matters outside the pleadings were included by the parties and not excluded by the Court.

A review of materials appended to plaintiff's Supplement to Plaintiffs' Opposition and Plaintiffs' Reply in Support fails to disclose any evidence that defendants interfered with or prevented the fulfillment of the condition precedent to the venture. The Supplement to Plaintiff's Opposition contains a total of fifteen (15) documents, among them depositions, audit reports and intra-company letters which illustrate, *inter alia,* the nature of the parent-subsidiary relationship between Telefónica and International as well as the decision-making process surrounding the Fall 1988 and Spring 1989 negotiations. Plaintiffs' Reply in Support contains an additional five documents, all of which are excerpts from depositions.

### A. *First Round of Negotiations: The Fall Venture Agreement*

Not one of the documents reveals a shred of evidence that defendants impeded the occurrence of the condition precedent to the fall venture agreement. Included as exhibits in the Supplement to Plaintiffs' Opposition are, among others, excerpts from the deposition of Jesús Guerre (for the proposition that it was Telefónica which twice postponed the closing date of the first set of negotiations and then unilaterally terminated the same on November 18, 1988); the deposition of Richard A. Kahn (to demonstrate that international was controlled by Telefónica and served merely as a conduit for the latter); and audit reports (establishing that International was undercapitalized). Plaintiff's Reply in Support includes excerpts of the depositions of Mr. Richard A. Kahn, Esteban Trigo and Víctor de Miguel.

The only document which unquestionably betrays bad faith negotiations in contravention of both the duty of good faith and best efforts is the so-called "smoking-gun" letter dated February 10, 1989. But this letter is of no help to plaintiffs as it pertains to the second set of negotiations which began in February 1989. Pleadings to the effect that defendants breached the joint venture agreement by voluntarily preventing the occurrence of the condition precedent, *see e.g.* V. Comp. ¶ 32, have therefore taken plaintiffs as far as they can go insofar as the first round of negotiations is concerned.

Plaintiffs rely heavily on the depositions appended to their Reply in Support of the Motion for clarification and/or Reconsideration. They state:

> "Defendants, however, did not only refuse to cooperate in the obtainment of financing, they actually interfered and hindered with Mr. López's efforts to this effect.... By mid-October, the financ-

ing negotiations were well on their way, but they came to a sudden halt when Víctor de Miguel, the representative of Telefónica de España, S.A. [ ] in charge of negotiating the terms and conditions of the joint venture agreement, informed Chase that Telefónica would not accept a chattel mortgage over the equipment to be purchased with the funds to be obtained from the financing. Telefónica's refusal to accept a chattel mortgage as part of the financing was arbitrary inasmuch as the inclusion of such collateral in the financing agreement would have been consistent with the terms and conditions of the Joint Venture Agreement." Pls['] Reply in Supp., pp. 15–16, citations omitted.

The basis and context for this allegation is based on plaintiffs' rendition and interpretation of the deposition of Mr. Esteban Trigo, representative of Chase Manhattan Bank. After being asked whether he recalled a certain conversation with Víctor de Miguel and answering in the affirmative, Mr. Trigo gave his recollection:

> Well, he [Mr. de Miguel] was very interested in us providing the financing, but when I brought up the subject as to what kind of structure we were considering, he wasn't feeling very comfortable in us having a mortgage on the equipment and at the same time having a 60 percent guarantee from Telefónica.
>
> He expressed that if we required those chattel mortgages by the same amount we were obtaining those mortgages, that we had to reduce their guarantee. And I told him that it wasn't acceptable to us in that way. It was a complimentary collateral. It wasn't something that you could reduce from or nothing.
>
> . . . . .
>
> ... He [Mr. de Miguel] expressed to me that he thought if this structure was actually formalized that Telefónica would incur more responsibility than would Multimedia. And this was his concern.

Reply in Supp., exhibit 2, pp. 68–69.

From the above, it is clear that plaintiffs' fail to show that as a matter of law there was any hindrance, interference or voluntary prevention of the condition precedent. It is conclusory and a mere allegation not supported by the evidence to argue that defendants' mere dissatisfaction with the structure being offered by a lending institution constitutes a voluntary prevention of a condition precedent, particularly when this dissatisfaction is grounded on considerations such as unanticipated added economic burden.

The exhibits and depositions—representing months of extensive discovery between the parties and viewed in the light most favorable to plaintiffs—fail to establish that, as a matter of law, plaintiffs satisfy the quantum of evidence necessary to go to the jury.[2] Therefore, this Court summarily dismisses all causes of action stemming from the still-born fall venture agreement, including any action for extra-contractual damages for breach of good faith and best efforts.

### B. *The Second Round of Negotiations: The February Negotiations*

The second round of negotiations is another matter. The February 10, letter does contain portions that could reasonably be understood by jurors as compelling evidence of bad faith and malicious negotiations violative of (1) Article 1072 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3047 and (2) defendants' duty of good faith and best efforts. It is entirely possible that influenced by this letter the jury could find that non-performance of the condition precedent was defendants' fault. From this finding, the jury might then surmise that the second round of negotiations could have produced a joint venture but for defendants' own non-performance or voluntary interference.

However, the breach of contract claim, as a matter of law, cannot reach the jury for all the elements necessary for the existence of a contract were not present at the

---

**2.** Plaintiffs would have to establish by preponderance of the evidence that defendants voluntarily interfered with the fulfillment of the condition precedent.

time defendants abandoned the negotiations. *See COPAN*, at p. 670–71.

### 1. *Local Contract Law Principles*

 Local law mimics the general law of contracts in its recognition that "[a]cceptance of an offer is ... the normal procedure to perfect a contract." *COPAN*, 113 D.P.R. 666, 670, *citing*, 31 L.P.R.A. § 3401. It is necessary that there be a meeting of the minds where the "offerors' declaration of willingness ... is definite, ... [and which] contains all elements of a contract ... deemed necessary so that such contract may be perfected by the mere acceptance of the offer." *COPAN*, at pp. 670–71. More importantly, the contract must have a true offer containing "all elements that are essential to the business under transaction; so that the contract [is] created by the mere acceptance of the same, that is, by the mere adhesion of the person to whom it is addressed ..." *COPAN*, at p. 671, *citing* Spanish Commentator, B. Moreno Quesada, La Oferta del Contador, 64–65, Colección Nereo, Barcelona (1963).

 Here, as in *COPAN*, the second round of negotiations never ripened into a contract notwithstanding the fact that Telefónica, maliciously and in a surreptitious fashion planned to mislead Mr. Delano–López into thinking that negotiations were proceeding when, in fact, they had decided not to consummate the venture.

Negotiations regarding the possibility of breathing new life into the joint venture were re-initiated on February 1991. V. Comp., ¶ 24; Suppl. to Pls['] Opp., p. 11 *citing* Exhibit 8, pp. 143–44. The parties agreed that Telefónica was to contact Spanish entities showing interest in the venture as well as Banco Central, for purposes of obtaining the requisite financing. V. Compl., ¶ 24. Closing was scheduled for April 15.

It is at this point that the February 10 letter provides a privileged insight into the alleged maturity of the contract. The letter confirms plaintiffs' allegations that defendants were to contact Banco Central for purposes of obtaining the requisite financ-ing. It underscores that "an affirmative answer from the bank [Banco Central] before March 15, 1989, is a necessary condition for the continuation of the process [negotiations]." *See* Supp. to Pls['] Opp., Exhibit 1, translation ours.

The letter also recites other elements that must be worked out *before* negotiations could continue. These include, for example: (1) "contact[ing] the Spanish partners and inquir[ing] their position about their participation in STNN; (2) discussing the contract with STNN (*revise the clauses*)," (emphasis supplied); and revising matters such as Mr. Delano López's contribution. *Id.* The letter also calls for, in the alternative, "giv[ing] the appearance that [Telefónica] will proceed ahead only to answer in the negative on 4–4–89. In this case [scenario], it does not make much sense to revise the thorny matters with Franklin [Delano–López] (i.e., his contribution)." *Id.*

The documentation before this Court fails to disclose that these essential elements of the joint venture were ever ironed-out. It is evident that further negotiations, including the negotiation of important contractual clauses, as well as certain authorizations, were necessary before the negotiations produced an enforceable contract. That contractual clauses must be finalized and fully agreeable to both parties and that authorization deemed necessary for the venture must be obtained before a contract is born is to state the obvious. Both are indispensable elements of the "business under transaction [the venture]," *see COPAN*, at p. 671. Therefore, the second round of negotiations never matured into a contract and defendants abrupt withdrawal from negotiations does not constitute a breach of contract.

### 2. *Pre-contractual Stage and Extra-contractual Negotiations*

 In Puerto Rico, parties which undertake negotiation of a contract are bound by a duty of good faith. *COPAN*, at

p. 678.[3] This stems from a recognition that while parties are free to consummate contracts or withdraw from negotiations, an unjust withdrawal during the pre-contractual phase may result in extra-contractual liability under Article 1802 of the Civil Code, 31 L.P.R.A. § 5141.[4]

While *COPAN* squarely recognizes a cause of action when a party unjustly interrupts contractual negotiations and no contract has been perfected, the holding of the case does not open the floodgates of litigation for those seeking court enforcement of nonexistent contracts. Rather, *COPAN* balances the general rule that "agreements need not be culminated and that, consequently, the interruption alone is not sufficient to impose liability," *see COPAN*, p. 680, with a recognition that certain behavior is actionable even absent a contract. To make this determination, it is necessary

> ... to examine the circumstances of the interruption, specifically, (1) the development of the negotiations, (2) how did they begin [awk.], (3) their course, (4) the conduct of the parties throughout them, (5) the stage at which the interruption took place, (6) the parties' reasonable expectations to form a contract, as well as any other relevant circumstance under the facts of the case submitted to judicial scrutiny." *Id.*

 The holding of the *COPAN* case is important to the case at bar not because it sheds any light on the alleged failure to use best efforts in obtaining financing; but rather because plaintiff's failure to establish defendant's voluntary prevention of the condition precedent does not deprive them of an action for extra-contractual damages incurred during the pre-contractual phase of negotiations. Although the negotiations had not developed to the point where a contract springs into exis-

tence, defendants' behavior was in violation of pre-contractual duties of good faith and best efforts. In this respect, the February 10 letter is, in this Court's opinion, irrefutable evidence that defendants were in bad faith and in violation of their duty to exert best efforts when they re-initiated negotiations. Any finding of the jury to the contrary would be subject to a successful motion for judgment no obstante veredicto. Therefore, this Courts enters summary judgment for plaintiffs insofar as the pre-contractual causes of action are concerned.

### 3. *Best Efforts.*

Plaintiffs' strenuously argue that defendants undertook an unconditional and enforceable contractual obligation to utilize best efforts, *see* Pls['']. Reply in Supp., pp. 11–14, because the same was explicitly stated in the joint venture agreement.[5] Worried by the fact that the duty of best efforts has been equated to the duty of good faith, plaintiffs point out that local courts have made no such distinction. *See* Pls['']. Reply in Supp., pp. 12–13, n. 4, and citations therein. This Court agrees that local jurisprudence has not made the distinction. However, the Court is of the opinion that plaintiffs' counsel was fully aware that a pre-contractual duty to exert best efforts was not explicitly recognized under *COPAN* and understood that the best way to ensure defendants affirmative steps in fulfilling the condition precedent was to include a best efforts clause in the agreement. Therefore, he proceeded to protect his clients with a best efforts clause. The net effect of this clause in the present case is to expand extra-contractual damages beyond a mere good faith requirement. This does not, in any manner, allow plaintiffs to now argue that the best efforts clause is an unconditional obligation within the joint venture agreement and

---

3. The Court need not determine whether Commonwealth law recognizes a duty to exert best efforts.

4. *COPAN* recognized the wide array of actions available to plaintiffs in seeking redress for pre-contractual improprieties. These include "dolus," fault, fraud, good faith, abuse of law, or other general principles. *See COPAN*, p. 679.

5. Embodied in the Agreement is an express undertaking by the parties to "... use [their] best efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate the transaction contemplated by this agreement." *See* Agreement, ¶ 12.02, p. 27.

that its violation calls for contractual damages.

 Best efforts as well as good faith are contractual terms supplied by courts; they are not contracts in and of themselves. *See* E. Allan Farnsworth, Contracts (8th Ed.1982), § 7.17, pp. 526–27 (1982); *cf. COPAN*, at p. 678. Plaintiffs will thus obtain redress in the form of extra-contractual damages, *see* Article 1802, 31 L.P.R.A. § 5141, arising out of the violation of duty of good faith and best efforts.

### III. Conclusion

This Court affirms its earlier Opinion except that it acknowledges that voluntary interference with a condition precedent renders a contract fully enforceable. This has the momentary and academic effect of reviving plaintiffs' claims for purposes of summary judgment consideration. On Reconsideration, it is this Court's opinion that, as a matter of law, no contract came to fruition during either of the two sets of negotiations. This Court orders that summary judgment be entered in favor of defendants for all causes of action arising from breach of contract. Conversely, this Court will enter summary judgment for plaintiffs on all pre-contractual causes of action.

This Court affirms its earlier dismissal of all causes of action by STNN, Mr. Delano–López, Ms. O'Reilly and the conjugal partnership between them. An injunction mandating the enforcement of the venture agreement is moot and is therefore denied.

IT IS SO ORDERED.