OPINION AND ORDER
PEREZ-GIMENEZ, District Judge.
I. Introduction
The third in a trilogy of opinions,[1] this case had its genesis on a failed venture which sought to create a Spanish language television news programming for broadcast to audiences across the United States. Following the issuance of summary judgment *219 on all contractual causes of action for Tele-fónica de España, S.A., and Telefónica International, S.A. (together “defendants”), and summary judgment on all pre-contractual causes of action arising from the second set of negotiations or “Spring Negotiations” for Satellite Broadcasting Cable, Inc., and Multimedia (together “plaintiffs”), see Satellite II, 807 F.Supp. 210, 217-18, and Supplemental Order dated May 21, 1992, the parties attended an in camera settlement conference. In accordance with the instructions of this Court, the parties have submitted memoranda of law on the proper scope of damages for willful and malicious termination or withdrawal from pre-contractual negotiations. For the reasons more fully set out below, this Court finds that plaintiffs are entitled to recover reliance but not expectation damages.
II. Opinion on Reconsideration dated April 7, 1992
In Satellite II, this Court recognized that under Producciones Tommy Muñiz v. Copan, 13 Official Translations 664 (1982), “an unjust withdrawal [or termination from] the pre-contractual phase [of negotiations] may result in extra-contractual liability under Article 1802 of the Civil Code, 31 L.P.R.A. § 514.” Satellite II, 807 F.Supp. at 216-17. After finding a letter written February 10, 1989, irrefutable evidence that defendants were “in bad faith and in violation of their duty to exert best efforts when ... negotiations were [reinitiated] in February,” this Court held that “although negotiations had not developed to the point where a contract [came] into existence, defendant’s behavior was in violation of pre-contractual duties of good faith and best efforts.” Id. 14. Therefore, summary judgment for all extra-contractual causes of actions stemming from the Spring Negotiations was entered in favor of plaintiffs. See Supplemental Order dated May 21, 1992.
III. The Scope of Damages in Precon-tractual Negotiations
The issue that troubles the Court today is one that the local Supreme Court has carefully side-stepped over the last ten years. Even the Supreme Court’s decision in Copan stands out as a remote, ill-fitted outpost in the uncharted civil code sea of precontractual liability when it comes to assisting this Court in its determination of the proper scope of damages. In Copan, the Court recognized that extra-contractual liability is incurred and damages may be awarded for the unjust withdrawal or termination of pre-contractual negotiations under a variety of theories which include, but are not limited to, fault, dolus, fraud, lack of good faith and abuse of law. Co-pan at 679. In doing so, however, Copan remained painfully aware of the competing interests subsumed within its holding — the need to balance the parties’ right to contract with the duty to negotiate in good faith:
It is a well known fact that nobody is under the obligation to enter into a contract. One of the consequences of this basic principle of the Law of Obligations is that the parties are not bound to proceed with the negotiations until a contract is perfected, but rather they are free to contract or to withdraw as it best suits their interests.
Preliminary negotiations, however, generate a social relationship that imposes on the parties the duty to act in good faith, which, as Diez-Picazo has correctly observed, “does not only govern legal relationships already established, but also those derived from a simple social contract.” (Citations omitted).
Copan at 676.
Having recognized that unjustified withdrawal or termination of precontraetual negotiations constitutes a tort under Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, Copan stares into the abyss and falls short of a definite pronouncement on the scope of damages, stating instead that “the problem [needs to be analyzed by] bearing in mind what legal concept — fault, dolus, fraud, good faith, abuse of law, or other general principle of law — is the most adequate to serve as legal ground on which to solve the case.” Copan at 679-680. At the moment of truth — that of defining the *220 proper scope of damages — the Court shies away from the altar.
To be sure, and as will be seen below, numerous Civil Code commentators have made pronouncements on the issue of the proper scope of damages but the local Supreme Court has yet to take a stand.[2]
IV. The Position of the Parties
A. Plaintiffs' Argument
The parties’ positions are as divergent as night and day. Plaintiffs argue that a party who willfully and maliciously withdraws from precontractual negotiations is liable for “negative” or reliance damages while a party who merely negotiates in bad faith is liable for “positive” or expectation damages. See Plaintiffs’ Memorandum of Law, p. 5. In support of this proposition, plaintiffs cite Spanish commentator Alberto Manzanares, who states that:
“[I]nitiating the negotiations with the purpose of causing harm, constitutes by itself an illicit act that clearly can be encompassed within the concept of extra-contractual [tort] or aquiline liability.” (Translation ours).
Plaintiffs’ Memorandum, p. 6, citing, Man-zanares, Alberto, La Responsabilidad Pre-Contractual en la Hipótesis de Ruptura Injustificada de las Negociaciones Preli-minares, XXXVIII Anuario de Derecho Civil 687, 689 (III, 1984).
Plaintiffs’ position also finds support in Alfonso De Cossío y Corral’s treatise on the subject, which favors the award of damages in cases where the party's willful misconduct results in the termination of precontractual negotiations:
Whenever [willful misconduct] results in harmful consequences, an action for total indemnification for willful misconduct will arise, in the terms that we have studied in chapter 1 of this work. The indemnification will therefore not be limited to the merely negative contractual interest; but it will be extensive to the harms and injuries of every kind, foreseeable and non foreseeable that could have followed the willful misconduct or omission. (Translation ours). (Emphasis supplied by plaintiffs).
Plaintiffs’ Memorandum, p. 7, citing, Alfonso De Cossío y Corral’s El Dolo en el Derecho Civil at 301 (1955).
Further support comes from two unlikely sources: a dissenting opinion by Associate Justice Diaz-Cruz in Copan and the final settlement of the Copan case in the lower courts. In Copan, Associate Justice Diaz-Cruz, embraces the distinction between unjust and malicious withdrawal from pre-contractual negotiations which plaintiff wishes to impress on this Court and recognizes two types of liability:
“(1) liability limited to expenses in cases of well-founded expectation of consummation of the contract [reliance], and (2) liability for damages imposed on whoever acts in bad faith [expectation].”
Copan, 13 Official Translation 664, 691 (1982) (Associate Justice Diaz-Cruz, dissenting).
In order to further substantiate an award of expectation damages, plaintiffs call the attention of this Court to the developments that followed the Copan decision. According to the documentary evidence submitted by both plaintiffs, upon remand, the Superior Court in Copan appointed a special commissioner whose recommendation for a damage ward of $2,505,893.21, plus attorney fees, was accepted before the parties entered a stipulation settling the case for $1,400,000.00 while the same was on appeal. Plaintiffs emphasize that the commissioner’s recommendation — initially accepted by the Superior Court — awarded damages for lost profits, lost credit and lost commercial opportunity. See Exhibit I, p. 8.
Based on the above quoted commentators and dissenting opinion, and because precontractual dealings are considered torts, plaintiffs contend that a party guilty of negotiating in bad faith during such *221 negotiation is liable not for reliance (on a promissory estoppel theory of liability) but for expectation damages (“lost profits” or “lucro cesante”).
B. Defendants’ Argument
Not to be outdone, defendants argue that the correct interpretation of the truncated majority opinion’s view of damages is that espoused by Justice Davila in his concurring opinion:
I believe I should also pronounce myself on the type of damage that should be compensated in these cases. We have a good example in the opinion of the Italian Court of Cassation, as summarized by Mariano Alonso Pérez: “precontractual liability does not suppose the recovery of all the contractual damages sustained by the other party, but only of those comprised within the so-called negative interest” — id quod interest contractum initium non fuisse — that is to say, those expenses incurred by the other party in foresight of the future contract — travel, expertise, advise, etc. — as well as the losses caused by not being able to take advantage of favorable opportunities to exercise a contract with other persons.
Copan, 693-694. (Justice Davila, concurring).
Defendants’ position finds support in recent pronouncements on the subject made by Spanish commentators. Although Diez-Picazo recognizes that, conceptually, the scope of damages may include either negative contractual interest (reliance damages) or positive contractual interest (expectation damages), he favors the former. In his opinion, the party in breach is responsible for costs and disbursements resulting from (1) the violation of the duty of good faith in the bargaining process and (2) the affront for the other party’s integrity. He states:
The doctrine of culpa in contrahendo [promissory estoppel] is a passive one because damages under said doctrine include the so called “negative contractual interest,” but not the positive interest.... [T]he negative contractual interest [is that damage which] must be compensated as a result of the sterility of a given negotiation. The German doctrine considers the same as “damage to the trust [between the parties],” that is, damages caused by the betrayal of the good faith, belief in the seriousness and honesty of another. It includes, of course, expenses and disbursements undertaken as a result of the execution of the projected contract. By contrast, it seems not to include the loss of other more favorable offers that were made during that time [pre-contractual negotiations], (Translation ours).
Diez-Picazo, Fundamentos del Derecho Civil Patrimonial, Madrid, Ed. Teenos, 1979, Vol. I at 192.
Alonso Pérez agrees with this position: “Precontractual responsibility does not call for the redress of all contractual damages suffered by the injured party but only those damages encompassed by the so called “negative interest” ... that is, the expenditures incurred by the injured party in reliance on the future contract — trips, expert reports, advise, etc_” (Translation ours).
Alonso Pérez, La Responsabilidad Precon-tractual, 47 Rev. Críticia de Derecho Inmo-biliario, 859, 905 (July-December 1971). And Estenza-Escobar states:
“If we sustain that the party that intentionally causes damage to another during preliminary negotiations incurs in a civil offense, a tort, liability will extend only to the damages caused, so that the injured party may be restored to the same position it was prior to the commencement of the negotiations [negative or reliance interest].”
Estenza-Escobar, Pedro F., La Responsa-bilidad Precontractual en Derecho Puer-torriqueño, 7 Rev. Der. Puertorriqueño 105, 106 (1963).[3]
With this in mind, the Court turns to the merit of each party’s position and finds the position espoused by the defendants the more solid one. Plaintiffs’ argument, Cor *222 ral’s statements, and the dissenting opinion’s concurrence, although plausible, fall short of the mark. As plaintiffs well know, a dissenting opinion is a rather flimsy twig upon which to hang a theoretical foundation; a twig which, under close analysis, breaks easily under the weight it is forced to bear.
The assertion that bad faith withdrawal or termination of precontractual negotiations gives rise to expectation damages is counter-intuitive. Contrary to plaintiffs’ assertion, willful misconduct is only a requirement for the existence of extra-contractual damages, not a reason for an essentially punitive, reliance award. To hold otherwise would mean that willful termination or withdrawal from precontractual negotiations gives rise to the same liability that flows from a breach of contract.[4] The internal logic of this holding collapses of its own weight for it would amount to a statement that violation of something less than a contract, i.e., precontractual negotiations — in effect can give rise to the same liability as breach of contract.
This Court is not myopic. Plaintiffs, are in effect, attempting to achieve by crook what they cannot achieve by hook — seeking a back door to expectation damages by means of expanding pre-contractual tort liability to cover all damages suffered as a result of the failed negotiations. Granted, local law explicitly recognizes that the cause of action is tortious in nature, but to interpret the Civil Code as allowing by recourse to tort what it cannot accomplish by recourse to contract law is to expand the field of precontractual liability beyond the recognition. Not only will parties fear violation of precontractual principles of law such as good faith and best efforts, they will be haunted by the specter of expectation damages under an expanded theory of tort liability — should they run afoul of poorly demarcated lines. Such holding would not only transgress principles of judicial restraint in an area best left to the legislative branch but would also have a severe chilling effect in the general freedom of contract.
V. Summary
While local civil jurisprudence conceptualizes malicious pre-contractual negotiations as a tort, it does not call for expectation damages. This Court recognizes the conceptual possibility of expanding the scope of damages but refuses to do so absent a clear legislative pronouncement on the subject. Any other holding would usurp legislative power for the judiciary. The commentary of Alfonso de Cossio y Corral and Justice Diaz-Cruz’s dissenting opinion notwithstanding, this Court believes that willful misconduct in the termination or withdrawal from pre-contractual negotiations gives rise to liability in the form of reliance damages. This is because the injured party relied to its detriment and, as in promissory estoppel, the party is entitled to recoup those costs genuinely and reasonably incurred in the pre-contrac-tual negotiations.
WHEREFORE, defendants’ petition to limit the scope of damages to reliance or negative interest is hereby GRANTED.
IT IS SO ORDERED.

. Satellite Broadcasting v. Telefonica de España, 786 F.Supp. 1089 (D.P.R.1992) ("Satellite I”); Satellite Broadcasting Cable v. Telefonica de España, No. 90-1662(PG) 807 F.Supp. 210 (D.P.R. April 7, 1992) ("Satellite II").

. Although the Court has come close to laying this issue to rest in Torres v. Garcia, 710 Official Translation 1, 10 (1987), and Villa & Hermanos, Inc. v. Owens Illinois, 17 Official Translation 987, 1001 n. 15 (1986), in both cases it found that withdrawal from pre-contractual negotiations was justified and, therefore, the scope of damages was not addressed.

. At least one other commentator is arguably in accord with this view: Albaladejo, Manuel, Derecho Civil, 7ma. Ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. I, at 384.

. As stated in Satellite II, the Spring contractual negotiations never even remotely complied with the requirements necessary at law to give rise to contractual liability. Satellite II at 11-14. Had negotiations progressed to a point where a contract came into existence then, perhaps, this Court would consider expectation damages. But such was not the case.